IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2003 Session

## JERRY NEAL CARPENTER v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
No. 47388     Richard R. Baumgartner, Judge

---

**No. E2001-01732-SC-R11-PC - Filed January 13, 2004**

---

The sole issue before the Court in this post-conviction proceeding is whether the petitioner, Jerry Neal Carpenter, was denied his constitutional right to the effective assistance of appellate counsel. At trial, the jury was given instructions on first degree premeditated murder, first degree felony murder, and robbery. The trial court declined trial counsel's request to provide the jury with lesser-included offense instructions, and Carpenter was convicted of first degree felony murder. Carpenter argues that he was denied the effective assistance of counsel on direct appeal because appellate counsel failed to challenge the trial court's refusal to instruct the jury on second degree murder as a lesser-included offense. After reviewing the record and applicable authority, we hold that Carpenter has failed to establish his claim of ineffective assistance of appellate counsel. We therefore affirm the Court of Criminal Appeals' judgment denying post-conviction relief.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Affirmed**

JANICE M. HOLDER, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., J., HERSCHEL PICKENS FRANKS, Sp.J., and WILLIAM H. INMAN, Sp.J., joined. FRANK F. DROWOTA, III, C.J., filed a concurring opinion. E. RILEY ANDERSON and WILLIAM M. BARKER, JJ., not participating.

Mark E. Stephens, District Public Defender, and John Halstead, Assistant Public Defender, Knoxville, Tennessee, for the Appellant, Jerry Neal Carpenter.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Fulks, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. FACTUAL AND PROCEDURAL BACKGROUND

On Monday, March 25, 1985, shortly after 7:00 p.m., Myrtle Chapman ("Mrs. Chapman") was found dead at her business, Myrt's Package Store ("Myrt's"), in Knox County, Tennessee. The following items were found near the store's cash register: a bank deposit bag, which was open and empty; a bank deposit slip showing that a deposit had been made on March 25; Mrs. Chapman's purse containing several hundred dollars; and Mrs. Chapman's glasses, which had blood on them. Blood spatters were also found throughout the store. The pathologist who performed the autopsy on the body of Mrs. Chapman testified that there were approximately ten deep lacerations to her head and face. The pathologist opined that a hatchet could have been used to inflict the wounds.

Mrs. Chapman's husband, J.D. Chapman ("Mr. Chapman"), testified that as his wife prepared to make a bank deposit on the morning of March 25, she discovered that money was missing from the store. Mr. Chapman stated that only he, his wife, his two nephews, and the appellant, Jerry Neal Carpenter, were behind the counter on March 24, a Sunday. Mr. Chapman spoke with his nephews and Carpenter at the store sometime between 4:30 and 5:00 p.m. on the day of Mrs. Chapman's death. Although Mr. Chapman told the men that one of them must have taken the money, he denied accusing Carpenter. Carpenter volunteered to leave the store and not return, if that was what Mr. Chapman wanted. Mr. Chapman agreed that it would be best if Carpenter left the store. Carpenter left, and Mr. Chapman and his nephews left the store sometime thereafter.

Carpenter's cousin, Darrell Waddell, testified that on the afternoon of March 25 he and Carpenter were helping to unload furniture at a furniture store near Myrt's when Waddell saw Carpenter receive a cut beneath his left eye. Carpenter announced that he was going to Myrt's to get a Band-Aid, and he left on foot at approximately 5:30 or 6:00 p.m. A customer testified that he saw Carpenter enter Myrt's at around 5:45 p.m. on March 25. Although the customer noticed that Carpenter had a cut under his left eye, there was no blood on Carpenter's clothing. After Carpenter expressed concern about needing stitches, both the customer and Mrs. Chapman examined the cut. No other persons were in the store at that time. When the customer asked what had happened, Carpenter replied that he had been upset, throwing things around, when something flew in his face. Carpenter used the telephone and then left the store on foot.

According to Waddell, Carpenter returned to the furniture store shortly after he left to get a Band-Aid at Myrt's. Carpenter went to Myrt's a second time for a soft drink and returned a short time later. The men continued to unload furniture. Carpenter then stated that he was going back to Myrt's to get something else to drink.

Imogene Smith, a close friend of Mrs. Chapman, testified that she spoke with Mrs. Chapman by telephone on March 25. At that time, Mrs. Chapman told her that Mrs. Chapman suspected Carpenter had stolen the money. In a later conversation with Ms. Smith at approximately 6:40 p.m., Mrs. Chapman stated that she needed to hang up because "that little son-of-a-bitch is coming back

in the store." When Ms. Smith asked Mrs. Chapman if she meant "the guy that you thought got your money," Mrs. Chapman replied affirmatively. After stating that Carpenter was coming back into the store, Mrs. Chapman promised Ms. Smith that she would call her back "when he leaves." Mrs. Chapman never called back. There was a busy signal when Ms. Smith tried to telephone Mrs. Chapman ten minutes later. Ms. Smith tried to telephone Mrs. Chapman several more times but continued to receive a busy signal.

Gregory Dean Herrell arrived at the furniture store just prior to Carpenter's return. He saw Carpenter walking toward the furniture store with a coat wadded up under his arm. Herrell noticed a knot on Carpenter's head. Carpenter, Waddell, and Herrell each took LSD. Herrell said that Carpenter seemed nervous and that he asked for a ride and offered to pay for the gas. Waddell arranged to meet Carpenter at the apartment of Carpenter's girlfriend sometime later, and Herrell and Carpenter left the furniture store together.

Carpenter placed the bundle he had been carrying on the floorboard of Herrell's car. When Herrell and Carpenter stopped for gas, Carpenter pulled out money to pay for the gas, and Herrell noticed that "he had more money with it." Herrell drove Carpenter to his girlfriend's apartment and saw Carpenter throw the coat he had under his arm into a nearby dumpster. Herrell also observed brown splotches on Carpenter's pants. Carpenter told Herrell that he thought he had killed someone and asked that Herrell "[b]e my brother on this." After leaving Carpenter at the apartment, Herrell found a hatchet on the floorboard of his car. Herrell first mentioned finding the hatchet during his trial testimony. Herrell testified that the hatchet was stained the same brown color as the splotches on Carpenter's pants. Herrell said that he felt scared when he saw the hatchet, and he tossed the hatchet into a lake.

Waddell testified that there was a woodpile at the furniture store and that a hatchet was kept there to split wood. Although he looked for the hatchet after March 25, he did not find it. Waddell also testified that when he arrived at the apartment to meet Carpenter, he noticed that Carpenter's blue jeans had dark spots on them that appeared to be blood. In addition, Waddell noticed a "big knot" on Carpenter's head. Waddell and Carpenter drove to Carpenter's residence, where Carpenter changed clothes before going to the basement. While Carpenter was in the basement, Waddell heard a furnace door open and close.

Waddell and Carpenter drove past Myrt's after they left Carpenter's residence. When Waddell saw police cars and an ambulance at Myrt's, he asked Carpenter, "What's this law and stuff doing there?" Carpenter replied, "I think I've hurt [Mr. Chapman]. Me and [Mr. Chapman] got in a fight." The two men later stopped for gas. Carpenter said that he would pay for the gas and pulled out several five-, ten-, and twenty-dollar bills. When Waddell asked where Carpenter got the money, he replied, "I think I've killed [Mrs. Chapman]." Carpenter then said, "She seen me getting into her money bag." He then told Waddell that Mrs. Chapman had hit him on the head with a stick.

A detective testified that some items of clothing were retrieved from a dumpster. A serologist testified that stains found on this clothing and on Mrs. Chapman's glasses were consistent

with the blood of both Carpenter and Mrs. Chapman. A search of the furnace at Carpenter's residence yielded several metal fragments that a metallurgist determined to be rivets and fasteners similar to those used in the garment industry to make blue jeans.

Carpenter was charged with first degree murder[1] and robbery. The trial court denied trial counsel's request that the court instruct the jury as to all lesser-included offenses. The trial court instructed the jury that it could find Carpenter guilty of either of the separate counts of premeditated murder or felony murder. Carpenter was convicted of felony murder and was acquitted of the charge of robbery. He received a life sentence. In an amendment to his motion for new trial, Carpenter alleged that the trial court erred in failing to instruct the jury on second degree murder.[2] However, appellate counsel did not raise this issue on direct appeal. The Court of Criminal Appeals affirmed Carpenter's conviction and sentence. State v. Carpenter, 773 S.W.2d 1 (Tenn. Crim. App.), perm. app. denied (Tenn. 1989).

In May 1992, Carpenter filed a pro se petition for post-conviction relief that was later supplemented by appointed counsel. The petition alleged, among other things, that Carpenter was denied the effective assistance of appellate counsel because appellate counsel failed to challenge the trial court's refusal to instruct the jury on second degree murder as a lesser-included offense. The post-conviction court held a hearing on the petition in February 1999.[3] At this hearing, the two attorneys who represented Carpenter both at trial and on direct appeal testified. The court denied Carpenter's petition for post-conviction relief in June 2001,[4] and Carpenter filed a timely notice of appeal. The Court of Criminal Appeals affirmed the decision of the post-conviction court.

We granted permission to appeal to determine whether Carpenter was denied the effective assistance of appellate counsel.

---

[1]At the time of Carpenter's offense, Tennessee Code Annotated section 39-2-202(a) (1982) defined first degree murder as:

> Every murder perpetrated by means of poison, lying in wait, or by other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb, is murder in the first degree.

[2]Tennessee Code Annotated section 39-2-211(a) (1982) stated that "[a]ll other kinds of murder shall be deemed murder in the second degree." Trial counsel requested that lesser-included offenses be instructed for all of the offenses charged in the indictment. In the amendment to the motion for new trial, however, counsel challenged only the omission of an instruction on second degree murder.

[3]According to the post-conviction court, there were "many delays occasioned by both sides" prior to the hearing on the merits.

[4]The post-conviction court acknowledged that "the delay between the post conviction trial and [its] opinion is inordinately long and not justified" and that it "did not give the appropriate priority to this case."

-4-

## II.  ANALYSIS

To determine whether appellate counsel was constitutionally effective, we use the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984) – the same test that is applied to claims of ineffective assistance of trial counsel asserted under the Sixth Amendment to the United States Constitution.  Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995); see also Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying Strickland to a claim of attorney error on appeal). Under Strickland, we must determine: 1) whether counsel's performance was deficient; and 2) whether the defense was prejudiced by the alleged deficiency.  466 U.S. at 687.  The petitioner bears the burden of establishing both prongs of this test.  Id. at 690-94.  Failure to establish either prong provides a sufficient basis to deny relief.  Id. at 697.  Accordingly, a court need not address both prongs if the petitioner makes an insufficient showing of one component.  Id.

Because the post-conviction petition in this case was filed prior to 1995, Carpenter must prove that he was denied the effective assistance of appellate counsel by a preponderance of the evidence.  See King v. State, 989 S.W.2d 319, 323 (Tenn. 1999) (noting the proper standard for reviewing a post-conviction petition under the pre-1995 Post-Conviction Procedure Act).[5]  The issue of whether a defendant received effective assistance of counsel is a mixed question of law and fact. State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001).  Therefore, we review this issue de novo, with a presumption of correctness given only to the post-conviction court's findings of fact.  Id.

### Performance

Under the first prong of the Strickland test, we determine whether counsel's performance was deficient.  466 U.S. at 687.  Carpenter alleges that his appellate counsel were ineffective on appeal because they omitted the issue of the trial court's failure to instruct the jury on second degree murder. To prove deficient performance in this case, Carpenter must show that this omission was "so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Dean v. State, 59 S.W.3d 663 (Tenn. 2001) (quoting Strickland, 466 U.S. at 688); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975) (holding that in order to be effective, counsel's performance must be "within the range of competence demanded of attorneys in criminal cases").

Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. King v. State, 989 S.W.2d 319, 334 (Tenn. 1999); Campbell v. State, 904 S.W.2d 594, 596-97 (Tenn. 1995).  Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).  The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion.  Jones, 463 U.S. at 751; King, 989 S.W.2d at 334; Cooper, 849 S.W.2d at 747.  Therefore, appellate counsel's

---

[5]Under the current Post-Conviction Procedure Act, petitioners have the burden of proving factual allegations by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f) (2003).

professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. See Campbell, 904 S.W.2d at 597; see also Strickland, 466 U.S. at 689. We should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight. See Campbell, 904 S.W.2d at 597; see also Strickland, 466 U.S. at 689; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases. Campbell, 904 S.W.2d at 597.

If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. See, e.g., Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. See United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993).

In evaluating counsel's performance in a case involving the failure to raise an issue on appeal, the Seventh Circuit Court of Appeals uses the following weighing test: "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985). This weighing test was favorably cited by the United States Supreme Court in Smith v. Robbins, 528 U.S. 259, 288 (2000). However, we decline to hold that the *only* way to show deficient performance of appellate counsel in a case involving the omission of an issue on appeal is to establish that the omitted issue was clearly stronger than the issues that counsel did present on appeal. Instead, we agree with the Supreme Court of Georgia that this weighing test

> does not effectively operate in all cases in which appellate counsel's performance is claimed to be deficient because of a failure to assert an error on appeal. Situations may arise when every error enumerated by appellate counsel on appeal presented a strong, nonfrivolous issue but counsel's performance was nonetheless deficient because counsel's tactical decision not to enumerate one rejected error "was an unreasonable one which only an incompetent attorney would adopt."

Shorter v. Waters, 571 S.E.2d 373, 376 (Ga. 2002) (citation omitted).

The relative strength of an omitted issue is one among many factors that the United States Court of Appeals for the Sixth Circuit considers under the first prong of Strickland in evaluating the performance of an attorney who has omitted a particular issue on direct appeal. See Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999). The Sixth Circuit considers the following non-exhaustive list of inquiries in conducting such an evaluation:

1) Were the omitted issues "significant and obvious"?
2) Was there arguably contrary authority on the omitted issues?
3) Were the omitted issues clearly stronger than those presented?
4) Were the omitted issues objected to at trial?
5) Were the trial court's rulings subject to deference on appeal?
6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7) What was appellate counsel's level of experience and expertise?
8) Did the petitioner and appellate counsel meet and go over possible issues?
9) Is there evidence that counsel reviewed all the facts?
10) Were the omitted issues dealt with in other assignments of error?
11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Id. We agree that this non-exhaustive list is useful in determining whether an attorney on direct appeal performed reasonably competently in a case in which counsel has failed to raise an issue. As Strickland states, when assessing an ineffective assistance of counsel claim, the performance inquiry must focus on "*all the circumstances*" in determining whether counsel's assistance was reasonable. 466 U.S. at 688 (emphasis added). We note, however, that the final factor listed by the Sixth Circuit, whether the decision to omit an issue was "an unreasonable one which only an incompetent attorney would adopt," reaches the ultimate question under the first prong of Strickland and therefore is not helpful in deciding whether appellate counsel's performance was deficient. If the answer to the final inquiry listed above is "yes," then, by definition, the petitioner has met the burden of showing deficient performance under the first prong of Strickland.

1) Was the omitted issue "significant and obvious"?

In evaluating the reasonableness of appellate counsel's failure to raise the second degree murder instruction issue on appeal, we must consider: 1) whether second degree murder was considered a lesser-included offense of first degree murder at the time of the trial and appeal; and if so, 2) whether case law at the time of the trial and appeal clearly required that the jury be given such an instruction under the facts of this case. At the time of Carpenter's trial and appeal, it is clear that second degree murder was considered a lesser-included offense of both premeditated murder and felony murder. See, e.g., State v. Allen, 692 S.W.2d 651, 653 (Tenn. Crim. App.), perm. app. denied (Tenn. 1985) (holding that "murder in the perpetration of a robbery is a murder in the first degree, T.C.A. § 39-2-202(a). Inherent in this offense is the lesser included offense of murder in the second degree"). It was also clear that a trial court's refusal to instruct a jury on second degree murder as a lesser-included offense of first degree murder could be reversible error. See, e.g., State v. Wright, 618 S.W.2d 310, 313-14 (Tenn. Crim. App. 1981) (finding that the trial judge committed reversible error in refusing to charge the jury on the lesser-included offenses of murder in the first degree). Indeed, we note that trial counsel objected to the trial court's failure to instruct the jury on lesser-included offenses, and appellate counsel included this issue in an amendment to Carpenter's

motion for new trial. Thus, we conclude that the omitted issue was "significant and obvious" in part. The law regarding when lesser-included offense instructions were required, however, was not clear at the time of Carpenter's appeal.

### 2) Was there arguably contrary authority on the omitted issue?

We have found no authority stating that second degree murder was not a lesser-included offense of first degree premeditated murder or first degree felony murder at the time of Carpenter's trial and appeal. At the time of Carpenter's appeal, however, the law was less than clear regarding when lesser-included offense instructions must be given. In Strader v. State, 362 S.W.2d 224, 228 (Tenn. 1962), the Court held that instructions on lesser-included offenses must be given "where the evidence, upon any view the jury may take of it, permits an inference of guilt as to such lesser included offenses . . . ." See also Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975) (quoting Strader, 362 S.W.2d at 228). When there is no evidence to support a lesser-included offense, we have held that a trial court is not required to instruct on lesser-included offenses. See Whitwell v. State, 520 S.W.2d 338, 343 (Tenn. 1975); see also State v. Mellons, 557 S.W.2d 497, 499 (Tenn. 1977) (citing Whitwell, 520 S.W.2d 338). The apparent clarity of the law was somewhat clouded by State v. King, 718 S.W.2d 241 (Tenn. 1986), which at the time of Carpenter's direct appeal was this Court's most recently published opinion addressing when lesser-included offense instructions must be given. In King, the Court held:

> The record shows that [the] defendant was indicted for both common law murder and two counts of felony murder, and all counts were submitted to the jury for decision. Anytime a court instructs a jury in a homicide case, he [sic] should instruct all lesser included offenses and in most instances it is error not to do so. *But where the evidence clearly shows that [the] defendant was guilty of the greater offense, it is not error to fail to charge on a lesser included offense*. State v. Mellons, 557 S.W.2d 497 (Tenn. 1977); Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975); State v. Wright, 618 S.W.2d 310, 315 (Tenn. Crim. App. 1981). In this case the record of the guilt phase of the trial is devoid of any evidence which would permit an inference of guilt of second-degree murder or the other lesser included offenses. The State's proof of premeditation and deliberation, and the fact that the killing occurred during the commission of a felony, which includes the defendant's confessions to Childers and to the police, was uncontradicted. Consequently, we find no prejudicial error in the trial judge's refusal to instruct the jury on the elements of murder in the second degree.

718 S.W.2d at 245 (emphasis added).

The quoted language "where the evidence clearly shows that [the] defendant was guilty of the greater offense, it is not error to fail to charge on a lesser included offense" apparently has been a source of misunderstanding as to when lesser-included offense instructions must be given.[6] Appellate counsel appear to have considered this language in King to be the rule governing when a lesser-included offense instruction was required. One of Carpenter's attorneys asserted: "I don't think the proof, under any view of it, justified a determination that it was not first degree murder, but was second degree murder."[7] The Court of Criminal Appeals similarly stated that an instruction on second degree murder was not required in the present case because "[t]here was no evidence at trial that the Petitioner was guilty *only* of second degree murder or other lesser offense."[8]

When lesser-included offense instructions must be given may vary depending on whether Strader or King is applied. Applying Strader, the evidence in this case would permit an inference of guilt as to second degree murder and therefore would support an instruction on this lesser-included offense. See 362 S.W.2d at 228. Applying King, however, an instruction on second degree murder may not have been required because the evidence supporting a first degree murder conviction was strong. King states that "where the evidence clearly shows that [the] defendant was guilty of the greater offense, it is not error to fail to charge on a lesser included offense."[9] 718 S.W.2d at 245.

The confusion at the time of Carpenter's appeal regarding when lesser-included offense instructions were required weighs heavily in favor of concluding that appellate counsel's decision not to pursue the issue was reasonable. Strickland demands that an attorney's performance be judged "on the facts of the particular case, *viewed as of the time of counsel's conduct*." 466 U.S. at 690 (emphasis added); see also Smith v. Murray, 477 U.S. 527, 536 (1986). Furthermore, appellate

---

[6]Under current law, lesser-included offense instructions must be given if "any evidence exists that reasonable minds could accept as to the lesser-included offense" and if this evidence, viewed in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence, "is legally sufficient to support a conviction for the lesser-included offense." State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999).

[7]We have recently observed that "[a] defendant need not demonstrate a basis for acquittal on the greater offense to be entitled to an instruction on the lesser offense." State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002).

[8]In Allen, we expressly stated, "We did not hold in Burns that a lesser-included offense instruction is required when reasonable minds could accept that *only* the lesser offense occurred." 69 S.W.3d at 188.

[9]In a case decided shortly after the direct appeal in Carpenter's case, the Court stated the holding in King as follows: "where the record clearly shows that the defendant was guilty of the greater offense *and* is devoid of any evidence permitting an inference of guilt of the lesser offense, it is not error to fail to charge on a lesser offense." State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990) (emphasis added); see also State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999) (stating Boyd's interpretation of King); State v. Stephenson; 878 S.W.2d 530, 550 (Tenn. 1994) (stating Boyd's interpretation of King). It should now be clear that overwhelming evidence as to the greater offense does not obviate the necessity to instruct as to lesser-included offenses. See, e.g., State v. Richmond, 90 S.W.3d 648, 662-63 (Tenn. 2002). However, when a lesser-included offense instruction is improperly omitted, the error may be harmless beyond a reasonable doubt. See Allen, 69 S.W.3d at 191 (holding that harmless error inquiry is whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial).

counsel's decision regarding which issues to raise must be viewed in light of the strategic value of limiting the number of arguments presented on appeal. See Jones v. Barnes, 463 U.S. 745, 753 (1983).

### 3) Was the omitted issue clearly stronger than those presented?

In assessing the adequacy of appellate counsel's judgment in raising certain issues and rejecting others, we must examine the relative strengths and weaknesses of the issues. On direct appeal of Carpenter's convictions, appellate counsel raised six issues, alleging that the trial court committed reversible error: 1) in failing to suppress as fruits of unconstitutional conduct evidence taken from Carpenter's home, a dumpster, and witness Dean Herrell; 2) in allowing witness Imogene Smith to testify as to her conversation with Mrs. Chapman concerning the identification of the defendant and his presence at the scene because such evidence was hearsay and violated the defendant's right of confrontation; 3) in allowing witness Darrell Waddell to read certain material contained in a pre-trial statement because it constituted inadmissible hearsay; 4) in permitting the state to rehabilitate witness Dean Herrell on re-direct examination through leading questions and through the use of his prior consistent statements because the testimony violated the defendant's right to confrontation, the rule against hearsay, and the authoritative guidelines governing re-direct examination procedure; 5) in excluding hospital records of the witness Waddell that tended to impeach his credibility; and 6) in refusing to instruct the jury on the issue of accomplice testimony. See State v. Carpenter, 773 S.W.2d 1, 3 (Tenn. Crim. App. 1989). The Court of Criminal Appeals found merit in two of these six issues, although the court ultimately concluded that the trial court's errors were harmless. Id. at 7-8, 10. Thus, some fairly strong issues were raised. Given the confusion regarding the proper standard to apply in determining when lesser-included offense instructions were required, it is unclear whether the omitted issue would have resulted in reversal on appeal if it had been raised. In light of the facts of the case and the precedent available at the time of Carpenter's appeal, we cannot conclude that the omitted issue was "clearly stronger" than those presented.

### 4) Was the omitted issue objected to at trial?

At trial, Carpenter's counsel requested that the trial court give instructions as to the lesser-included offenses of all offenses included in the indictment. The trial court refused to do so. Counsel subsequently objected to the trial court's failure to instruct on lesser-included offenses, although the statute applicable at the time of Carpenter's trial did not require a defendant to do so. See Tenn. Code Ann. § 40-18-110(a) (1982).[10]

---

[10]Tennessee Code Annotated section 40-18-110(a) (1982) stated that "[i]t shall be the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, *without any request by the defendant to do* so." (Emphasis added). Under the current statute, a trial judge may charge the jury on any lesser-included offense that is supported by the evidence, but in the absence of a written request from a party specifically identifying the particular lesser-included offense or offenses for which a jury instruction is sought, such

(continued...)

5) Was the trial court's ruling subject to deference on appeal?

The trial court's refusal to instruct the jury on second degree murder was not a ruling that was subject to deference on appeal. The propriety of lesser-included offense instructions is a mixed question of law and fact. The standard of review for mixed questions of law and fact is de novo with no presumption of correctness. See, e.g., Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995).

6) Did appellate counsel testify in a collateral proceeding as to
their appeal strategy and, if so, were the justifications reasonable?

At the post-conviction hearing, appellate counsel testified at length about their strategy on appeal. In determining what issues to raise, they chose those issues that they thought were most likely to achieve success. One of Carpenter's attorneys stated that he did not raise the issue of the trial court's failure to instruct the jury on second degree murder because he "just didn't see that the proof supported a second degree murder conviction, based on the evidence" and because he thought that the argument would be "a waste of time." He added that the omission of this issue on appeal was strategic, explaining, "I thought we had some hard-rock good points to make, and I wanted to focus on those." Co-counsel agreed with this assessment, stressing that the second degree murder instruction issue was not raised because they preferred to "fire some rifles" rather than "firing a shotgun." We hold that under the circumstances of this case these strategic decisions were reasonable.

7) What was appellate counsel's level of experience and expertise?

Testimony at the post-conviction hearing revealed that both attorneys were experienced in representing criminal defendants. Prior to his representation of Carpenter, one attorney had represented about fifteen defendants who were charged with first degree murder. Of those fifteen cases, approximately six or seven had gone to trial, among them "a couple of death penalty cases." Prior to representing Carpenter, the second attorney had represented about "half a dozen" persons who had been charged with murder. Of those half dozen cases, three or four had gone to trial.

8) Did the petitioner and appellate counsel meet and go over possible issues?

Carpenter continued to communicate with his attorneys after his conviction. He received copies of the briefs that were submitted on appeal. Carpenter did not ask appellate counsel to raise

---

[10](...continued)
instruction is waived, and the failure of a trial judge to instruct the jury on any lesser-included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal. See Tenn. Code Ann. § 40-18-110(b), (c) (2003).

any specific issues on appeal.[11]  In a letter to one of his attorneys, dated March 3, 1988, Carpenter wrote that "[b]ecause you are my lawyer God will guide you in my appeals[.]  [A]s always, I have full confidence in your abilities."

9)  Is there evidence that counsel reviewed all the facts?

Because both appellate attorneys represented Carpenter at trial, they were extremely familiar with the trial record.  Moreover, according to testimony at the post-conviction hearing, both attorneys "carefully went through each item [in the motion for new trial] and analyzed [it]."

10)  Was the omitted issue dealt with in other assignments of error?

The omitted issue was not dealt with in other assignments of error.

### III.  CONCLUSION

The factors we have considered in evaluating appellate counsel's performance are merely matters to be considered in determining the constitutional effectiveness of appellate counsel. Nonetheless, we observe that the application of most of the factors indicates that appellate counsel's performance was not deficient.  Because the petitioner has failed to establish the first prong of Strickland, we need not address prejudice, the second prong.  By failing to establish deficient performance, Carpenter has thereby failed to establish that his appellate counsel were constitutionally ineffective.  Accordingly, we affirm the judgment of the Court of Criminal Appeals.

It appearing that the petitioner is indigent, costs of this appeal are assessed against the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE

---

[11]We do not suggest that appellate counsel must raise all issues that a client asks to be raised on appeal. Generally, strategy is solely a matter of counsel's professional judgment. See Tenn. R. Sup. Ct. 8, § 1.2, cmt. 1 (2003) (stating that "the lawyer normally will assume responsibility for technical and legal tactical issues"); see also Jones, 463 U.S. at 751 (noting that there is no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").  Counsel must refuse to raise frivolous arguments that his or her client urges to be raised. See Tenn. R. Sup. Ct. 8, § 3.1 (2003).