IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2004

## CHARLES WILLIAM JONES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-D-2321      Steve R. Dozier, Judge**

**No. M2003-01851-CCA-R3-CD - Filed June 22, 2004**

The petitioner, Charles William Jones, appeals the denial of post-conviction relief relating to his conviction for second degree murder. On appeal, the petitioner contends the trial court erroneously instructed the jury regarding the definition of "knowingly" as applied to second degree murder. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Charles William Jones.

Paul G. Summers, Attorney General and Reporter; Michelle R. Chapman, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Ryan Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was convicted of second degree murder for shooting into a crowd of people and fatally wounding the victim, Eric Harvey. The trial court ordered the petitioner to serve a twenty-two-year sentence. A panel of this court affirmed the petitioner's conviction and sentence on direct appeal. *See* State v. Charles W. Jones, No. M2001-00353-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 952, at *1 (Tenn. Crim. App. Dec. 13, 2001).

We incorporate the following facts of the underlying offense from this court's opinion on direct appeal:

> On July 2, 1999, the [petitioner] and three or four other young men entered a housing project in Nashville. Earlier in the day, the young men had attended a cook-out in the housing project where a fight had occurred. Marcus Fitzgerald was driving his mother's black Cadillac automobile with the [petitioner] sitting in the front

passenger's seat. Michael Fanning and Corey Smith were sitting in the back seat of the car. At approximately midnight, the car pulled to the side of a road within the housing project in order for Mr. Fitzgerald to talk with a friend, Wesley Holmes.

Mr. Holmes was standing with a group of people which included Justin Brown, Montez Mayberry, Cory Bryant, and Eric Harvey, the victim. Mr. Holmes approached the car and began talking with Mr. Fitzgerald. During the conversation, words were exchanged between the [petitioner] and members of the crowd and a single shot was fired. The [petitioner] and the individuals inside the car testified that the single shot was fired by someone outside their vehicle and that they thought someone was shooting at the car. The witnesses standing near the victim testified that the [petitioner] fired the single shot into the air and that no shots were fired except by the [petitioner].

After the single shot was fired, the [petitioner] and the group standing nearby again exchanged words. The [petitioner] then stood up through the sunroof of the Cadillac and began firing into the crowd. One of the bullets struck the victim. The victim later died of the gunshot wound.

The [petitioner] testified that one of the members of the crowd threatened him. The [petitioner] stated that Mr. Brown told him that he would "be right back with [his] gun." At this point, the [petitioner] contends that he fired several shots into the air through the sunroof and directed Mr. Fitzgerald to drive away. The [petitioner] maintained that he did not shoot into the crowd and that he did not intend to hurt anyone. The [petitioner] presented evidence that Michael Johannes, a passenger in another car, fired once into the crowd, and was later overheard admitting to the murder of the victim.

Metro Police officers arrived within minutes and discovered six .9 millimeter shell casings. Two more .9 millimeter shell casings were later found under the hood of Mr. Fitzgerald's car. Steve Scott of the Tennessee Bureau of Investigation testified that all of the shell casings were fired from the same weapon.

*Id.* at **2-4.

## I. POST-CONVICTION RELIEF HEARING

At the post-conviction relief hearing, trial counsel testified he could not recall discussing at trial the terms "result of conduct" and "nature of conduct" as part of a jury instruction on second

-2-

degree murder. Trial counsel stated he was unaware of developing case law at the time of trial and during the pendency of appeal regarding an instruction on the "nature of conduct" in a second degree murder trial. Trial counsel further stated he believed the trial court properly instructed the jury at trial.

In its extensive, scholarly order denying post-conviction relief, the post-conviction court noted the trial court instructed the jury that in order to convict the petitioner of second degree murder, they must find that the petitioner "knowingly" killed the victim. The post-conviction court noted the trial court further instructed the jury that:

> A person acts "knowingly" with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

We also note this is the exact definition of "knowingly" set forth in the statutes. *See* Tenn. Code Ann. §§ 39-11-106(a)(20), -302(b).

The post-conviction court found trial counsel was not ineffective in failing to object to the trial court's instruction of "knowingly" as it related to second degree murder. The post-conviction court noted the instructions were consistent with the applicable statutory provisions and that the case law regarding the instructions at the time of the petitioner's trial was unclear. The post-conviction court further found the petitioner failed to establish that the jury's verdict would have been different had trial counsel persuaded the trial court to amend its definition of "knowingly."

## II. ANALYSIS

The petitioner contends the trial court erroneously instructed the jury regarding the definition of "knowingly" as it relates to second degree murder. However, the petitioner in the argument portion of his brief presents this issue as a free-standing claim; namely, the trial court's instructions deprived the petitioner of due process. Subject to certain exceptions, the Post-Conviction Procedure Act prohibits consideration of any claim which could have been, but was not, presented in an earlier proceeding. Tenn. Code Ann. § 40-30-106(g) (2003). One of the exceptions relates to a claim based upon a new constitutional right requiring retroactive application. *Id.* at (g)(1). However, we conclude that a new constitutional right is not at issue. The petitioner failed to raise this issue on direct appeal; thus, the free-standing claim is waived. Regardless, even if we considered the issue to be a claim of ineffective assistance of counsel due to trial counsel's failure to object to the instruction at trial or to present the issue on direct appeal, the petitioner is not entitled to relief.

When a claim of ineffective assistance of counsel is made, the burden is upon the complaining party to show (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. *See* Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.

-3-

2052, 2064, 80 L. Ed. 2d 674 (1984); Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, we assess performance by eliminating the distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time. Wiggins v. Smith, 539 U.S. 510, ___, 123 S. Ct. 2527, 2536, 156 L. Ed. 2d 471 (2003); Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

The petitioner bears the burden of proving the factual allegations that would entitle petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461. However, the post-conviction court's conclusions of law – such as whether counsel's performance was deficient or whether that deficiency was prejudicial – are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

We first note that the jury instructions are not included in the appellate record. It is the duty of the appellant to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see* State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). However, in its written findings, the post-conviction court recited the trial court's instruction regarding the definition of "knowingly" utilized at trial. Therefore, we elect to address the issue on its merits.

On July 14, 2000, our state supreme court filed its opinion in State v. Ducker, 27 S.W.3d 889 (Tenn. 2000). In holding that child abuse was not a result-of-conduct offense, the court stated second degree murder was a result-of-conduct offense. *Id.* at 896. However, Ducker did not discuss jury charges.

In the unreported opinion of State v. Keith T. Dupree, W1999-01019-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 65 (Tenn. Crim. App. Jan. 30, 2001), this court, facing an issue of first impression, held the trial court erred by failing to charge the jury that the defendant must have acted "knowingly" with regard to the result of his conduct to be found guilty of second degree murder. *Id.* at **11-12. The instruction at issue in Dupree made no reference whatsoever to the result-of-conduct *mens rea*.

On April 16, 2002, this court issued its opinion in State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002), in which we held the trial court erred in instructing the jury that the defendant could be

-4-

convicted of second degree murder if he acted knowingly with respect to the nature of his conduct and the circumstances surrounding the conduct. *Id.* at 788. In Page, we stated:

> [I]t is now established that a knowing second degree murder is strictly a result-of-conduct offense. . . . A jury instruction that allows a jury to convict on second degree murder based only upon awareness of the nature of the conduct or circumstances surrounding the conduct improperly lessens the state's burden of proof.

*Id.* (citation omitted).

Although the record does not reveal the exact date of the petitioner's trial, the post-conviction court noted the Ducker opinion was filed approximately three months prior to the petitioner's trial and the Keith T. Dupree opinion was filed approximately four months after the petitioner's trial. Notice of appeal in this case was filed on February 7, 2001, only a week after Dupree was filed. The petitioner's brief was filed on August 24, 2001. The appeal was submitted to this court on briefs on November 28, 2001. This court entered its judgment and opinion affirming the petitioner's conviction on December 13, 2001.

We first note that the Page opinion was filed more than four months after the petitioner's appeal was concluded. We cannot conclude trial counsel's performance was deficient for failing to anticipate our holding in Page based upon Ducker and Keith T. Dupree. A panel of this court has recently noted that "ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." Ernest B. Eady v. State, No. E2002-03111-CCA-R3-PC, 2004 Tenn. Crim. App. LEXIS 284, at *22 (Tenn. Crim. App. Mar. 25, 2004) (citation omitted), *perm. to app. pending.* Although the Ducker opinion was filed prior to the petitioner's trial, Ducker was not a second degree murder case and did not address jury instructions. *See* Page, 81 S.W.3d at 788. The Keith T. Dupree opinion was filed after the petitioner's trial and one week before he filed his notice of appeal. However, the jury instruction in Keith T. Dupree was distinguishable from the jury instruction in both Page and the instant case. *See id.* We are unable to conclude that during the time of the petitioner's trial and direct appeal, the law regarding this issue was clear such that trial counsel should have raised the issue. Therefore, trial counsel was not deficient in failing to object to the jury instruction at trial or in failing to raise the issue on direct appeal. *See* Corwyn E. Winfield v. State, No. W2003-00889-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 1032, at **28-29 (Tenn. Crim. App. Dec. 10, 2003) (holding counsel was not deficient in failing to anticipate our ruling in Page based upon Ducker and Dupree), *perm. to app. denied* (Tenn. 2004).

Accordingly, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE