IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 11, 2025

## DARRNELL TRESHAWN WIGGINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 2017-CR-26130     Christopher V. Sockwell, Judge**

_____

### No. M2024-01329-CCA-R3-PC

_____

The Petitioner, Darrnell Treshawn Wiggins, appeals from the denial of his petition for post-conviction relief challenging his 2019 convictions for second degree murder, first degree felony murder, and kidnapping. The Petitioner argues that he received the ineffective assistance of appellate counsel for failure to challenge on direct appeal the admission of body camera footage showing the victim's dying declaration. The State asserts that (1) the Petitioner has waived his claim of ineffective assistance of appellate counsel by not properly presenting the issue before the post-conviction court, and (2) waiver notwithstanding, the Petitioner failed to establish appellate counsel's deficient performance and prejudice. Based on our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JOHN W. CAMPBELL, SR., J., joined.

William C. Barnes, Jr., Columbia, Tennessee, for the appellant, Darrnell Treshawn Wiggins.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Kyle E. Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

In 2016, the Petitioner was arrested for kidnapping and murdering his former girlfriend. *State v. Wiggins*, No. M2019-02086-CCA-R3-CD, 2021 WL 3828376, at *1 (Tenn. Crim. App. Aug. 27, 2021), *perm. app. denied* (Tenn. Dec. 8, 2021). At the Petitioner's trial, the evidence showed that the Petitioner had previously been in a relationship with the victim and that he had children with her. *Id.* at *2. In September 2016, the victim had called her father and told him that the Petitioner was "'chasing her and ramming her' in an attempt to run her car off the road." *Id.* A man was watching television in his home when he heard the victim scream for help. *Id.* The victim, wearing a blood-soaked shirt, entered the man's home and collapsed on his couch. *Id.* The victim was breathing heavily and asking the man continuously for help, so the man called 911. *Id.* While waiting for emergency services, the victim took a "big gasp" and made "a little gurgle" before she lost consciousness. *Id.*

After paramedics and law enforcement arrived, the victim regained consciousness as she was loaded into an ambulance. *Id.* at *3. Sergeant Brandon Park of the Maury County Sheriff's Department gave his body camera to Deputy Joel Willoughby, who recorded his conversation with the victim in the ambulance. *Id.* When asked who "did this" to her, she said the Petitioner's name. *Id.* The victim said that she had met the Petitioner at the skating rink that evening to let him see their children, but the Petitioner had expressed that he wanted the victim to leave with him, which the victim declined to do. *Id.* The victim also begged the officer not to "let [the Petitioner] take" her. *Id.* She said that the Petitioner had their children and informed the officer of the type of vehicle the Petitioner was driving. *Id.* Having suffered eight stab wounds, the victim later died. *Id.* at *4. The body camera footage depicting the victim's statements was ultimately admitted into evidence at the Petitioner's trial. *Id.* at *3.

Following the proof, the jury convicted the Petitioner of second degree murder, first degree felony murder, and kidnapping. *Id.* at *5; Tenn. Code Ann. §§ 39-13-202(a)(2), -210, -303. After the penalty phase, the jury also imposed a sentence of life imprisonment without the possibility of parole for the Petitioner's first degree murder conviction. *Wiggins*, 2021 WL 3828376, at *5. The trial court also sentenced the Petitioner to twenty-five years for his second degree murder conviction and six years for his kidnapping conviction, in accordance with the parties' agreement. *Id.* The trial court merged the murder convictions, and it ordered the Petitioner to serve his sentences concurrently. *Id.*

The Petitioner's motion for new trial was denied, and he filed a timely notice of appeal. *Id.*

On direct appeal, the Petitioner argued that (1) the evidence presented at trial was insufficient to support his convictions, (2) the jury improperly weighed the aggravating and mitigating circumstances in imposing a life sentence without the possibility of parole, (3) the State committed prosecutorial misconduct during its opening statement, and (4) the trial court erred in admitting an officer's testimony during the penalty phase, in denying the Petitioner's motion for a mistrial, and in denying his motion to dismiss for lack of a speedy trial. *Wiggins*, 2021 WL 3828376, at *1. This court affirmed the judgments of the trial court. *Id.*

The Petitioner was represented by an attorney during the pretrial phase ("pretrial counsel"), and he was represented by a different attorney during the trial phase of the proceedings ("trial counsel"). Trial counsel was permitted to withdraw following trial, and appellate counsel was appointed for the Petitioner.

Following the conclusion of the direct appeal proceedings, the Petitioner filed a timely pro se petition for post-conviction relief on December 22, 2021. The Petitioner also filed multiple pro se motions in the post-conviction court, which were subsequently denied. On November 1, 2023, the post-conviction court appointed counsel to represent the Petitioner.[1]

By and through post-conviction counsel, the Petitioner filed an amended petition for post-conviction relief on February 28, 2024. In its entirety, Paragraph 34 of the petition reads, "Counsel failed to make proper objections during the hearings and/or trial." In its response to the petition, the State declared that it was unsure of what specific objections the Petitioner referenced in Paragraph 34 of the petition. In a separate amended petition subsequently filed on May 29, 2024, the Petitioner contended in Paragraph 34 the following:

> That Counsel failed to preserve for appeal objections to a video of the decent [sic] in the ambulance. The objection to the video should have been a part

---

[1] It appears that after the Petitioner was appointed counsel, the Petitioner continued to file various pro se motions. While the post-conviction court did not explicitly rule on these motions, defendants are generally restricted from representing themselves while being represented simultaneously by counsel. *See State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976) ("[A defendant "does not have a constitutional right under the State or Federal Constitution to participate [i]n propria persona in his own defense and simultaneously to be represented by participating counsel.").

of his appeal but was not.  The Petitioner lost his right to argue said issues on appeal, and that he was prejudiced at trial by the playing of the video.

A post-conviction hearing ensued on June 10, 2024.

First, pretrial counsel testified that he represented the Petitioner while the case proceeded through general sessions court.  Once the Petitioner's case reached the circuit court, pretrial counsel was relieved from representing the Petitioner.  Pretrial counsel stated that he did not follow the Petitioner's trial, as he had been relieved from representation before the trial.  He testified that the body camera footage featuring the victim's statements was "damning."  After being asked whether it would have been prudent to include on appeal the issue of admissibility of the body camera footage, pretrial counsel answered, "If it was a piece of evidence that was admitted at trial, I think that it's probably prudent to include it in the appeal, yes."  He also stated that he believed the issue to be "part and parcel of the appeal."  However, pretrial counsel could not recall whether it was he or trial counsel that had argued the issue of the footage's admissibility in a motion *in limine*.

Trial counsel testified that he was appointed to represent the Petitioner during the trial phase.  He stated that pretrial counsel filed a motion to exclude the body camera footage and that the court denied the motion.  When asked whether the motion should have been part of the Petitioner's direct appeal, trial counsel answered, "I didn't handle the appeal.  But if I had handled the appeal, I would have considered that to be futile and utterly without merit on any level, factually or legally."  He also said that "there was no factual or legal basis to object to that video."

The State called the former assistant district attorney general who prosecuted the Petitioner's case at trial.  He said if the definition of "dying declaration" had an example in *Black's Law Dictionary*, then the body camera footage would be that example.  It was his recollection that the video captured "some of the last words that [the victim] ever spoke."  When asked whether the Petitioner deserved an argument regarding the video's admissibility in his direct appeal, the former prosecutor stated that "absent there being some strategic decision not to," he would have more than likely included the issue in the direct appeal.

After the proof at the post-conviction hearing, the post-conviction court stated that the Petitioner and the State could submit written arguments setting forth their positions for the post-conviction court's review. If any such arguments were submitted, they are not contained within the appellate record.

The post-conviction court filed its written order on August 16, 2024, denying the petition for post-conviction relief. In its recitation of the facts and procedural history of the case, the post-conviction court outlined the Petitioner's arguments, stating that the "Petitioner also claimed that issues that should have been brought up on appeal were not." In analyzing the admissibility of the body camera footage, the post-conviction court found that Tennessee Rule of Evidence 804(b)(2) "clearly" allowed for the introduction of the footage and that the deceased victim-declarant was unavailable at trial for the purposes of Rule 804(b)(2). As such, the post-conviction court concurred with trial counsel's testimony that this issue was "futile."

The post-conviction court concluded that the Petitioner failed to establish by clear and convincing evidence that he was denied the effective assistance of counsel. As a result, the post-conviction court denied the petition.

This timely appeal followed.

## II.    ANALYSIS

The Petitioner argues that he was denied the effective assistance of counsel because appellate counsel failed to raise an issue as to the body camera footage's admissibility in the Petitioner's direct appeal. The State argues that the Petitioner has waived this issue because he did not raise it in his post-conviction petition or any amendments thereto, argue it at the hearing, and the post-conviction court did not rule on it. The State further contends that, waiver notwithstanding, the Petitioner has failed to establish appellate counsel's deficient performance and prejudice.

We begin with the State's waiver argument. "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020). Here, Paragraph 34 of the May 2024 amended petition includes the statement, "The objection to the video should have been a part of his appeal but was not." The State argues that Paragraph 34 in its entirety concerned the failure to object to the admission of the video footage at trial rather than appellate counsel's failure to raise the issue on appeal. While it is arguable that the context of Paragraph 34 suggests that the Petitioner was attacking only pretrial and trial counsel's performance with respect to objecting to the footage before and during trial, one could also fairly interpret the above statement to assert error on the part of appellate counsel as well for failure to raise the issue on direct appeal. Furthermore, witnesses were asked at the post-conviction hearing about the prudence of including the issue of the footage's

admissibility on direct appeal. The post-conviction court also concluded that Rule 804(b)(2) clearly allowed for the admission of the footage. As such, we will consider the issue on the merits.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § -110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Id.* Because they relate to mixed questions of law and fact, the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial are reviewed under a de novo standard with no presumption of correctness. *Id.* at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006)

(citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that[,] but for counsel's unprofessional errors[,] the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

We determine whether counsel's representation on appeal was constitutionally effective using the same *Strickland v. Washington* standard of review applied to claims of ineffective assistance at trial asserted under the Sixth Amendment to the United States Constitution. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, then the reviewing court must determine the merits of the issue. *Id.* at 887. Obviously, if an issue has no merit or is weak, then counsel's performance on appeal will not be deficient if counsel fails to raise it. *Id.* Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from counsel's failure to raise the issue on appeal. *Id.* In sum, "[w]hen an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." *Id.* at 887-88 (citing *United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993)).

For the reviewing court to determine the merits of the previously omitted issue, a petitioner should present the issue in the same form and with the same legal argument, that is, applying law to the facts of the case, which the petitioner asserts counsel on appeal should have done. *Hamblin v. State*, No. M2012-01649-CCA-R3-PC, 2013 WL 5371230, at *8 (Tenn. Crim. App. Sept. 26, 2013). It is not enough to simply state that counsel on appeal should have raised certain issues and to argue that these issues could have resulted in relief being granted to the petitioner. *Id.*

"[T]here is no constitutional requirement that an attorney argue every issue on appeal." *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995). Rather, "the

determination of which issues to raise on appeal is generally within appellate counsel's sound discretion." *Carpenter*, 126 S.W.3d at 887 (citation omitted). An appellate court "should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight." *Id.* (citation omitted). Deference to tactical choices, however, does not apply if such choices are not "within the range of competence required of attorneys in criminal cases." *Id.* (citation omitted).

A reviewing court need not address both *Strickland* components if a petitioner makes an insufficient showing of one component. *Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). We focus our attention on *Strickland*'s prejudice prong in this case.

The Petitioner has failed to demonstrate that he was prejudiced by appellate counsel's failing to raise the issue of the video's admissibility on appeal. Where the declarant is unavailable as a witness in a prosecution for homicide, the hearsay rule does not exclude "a statement made by a declarant while believing that the declarant's death was imminent and concerning the cause or circumstances of what the declarant believed to be impending death." Tenn. R. Evid. 804(b)(2). The "unavailability of a witness" includes when the declarant "is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity." *Id.* 804(a)(4); (b)(2) Advisory Comm'n Cmt. ("Obviously with this restricted exception, the ground for declarant's unavailability invariably will be death."). In order for a statement to be admissible as a dying declaration, the following five elements must be established:

(1) The declarant must be dead at the time of the trial;

(2) the statement is admissible only in the prosecution of a criminal homicide;

(3) the declarant must be the victim of the homicide;

(4) the statement must concern the cause or the circumstances of the death; and

(5) the declarant must have made the statement under the belief that death was imminent.

*State v. Hampton*, 24 S.W.3d 823, 828-29 (Tenn. Crim. App. 2000). The first four elements are clearly established here based on the underlying facts. *See Wiggins*, 2021 WL 3828376,

at *1-3 (establishing that the declarant had died before trial, the Petitioner was tried for murder, the declarant was the victim of the homicide, and the victim's statement concerned the stabbing and the Petitioner's identity as the person who stabbed her). Further, the fifth element is established by the circumstances involving the victim's identification of the Petitioner while struggling to breathe, languishing under eight stab wounds, and bleeding profusely. *See, e.g.*, *State v. Taylor*, No. W2020-00437-CCA-R3-CD, 2021 WL 1546077, at *14 (Tenn. Crim. App. Apr. 20, 2021) (affirming admissibility of a victim's identification of a defendant made while the victim was in an ambulance struggling to breathe and suffering from four gunshot wounds). The Petitioner's pretrial counsel, trial counsel, and the former prosecutor acknowledged as much, positing that the footage was a standard example of evidence satisfying the "dying declaration" exception to the rule against hearsay. *See* Tenn. R. Evid. 804(b)(2).

As such, we agree with the post-conviction court that the video footage was admissible under Tennessee Rule of Evidence 804(b)(2) and that the Petitioner's issue in this regard is "futile." Because the issue is meritless, there was no prejudice to the Petitioner for appellate counsel not raising it on direct appeal. *Carpenter*, 126 S.W.3d at 887 ("[U]nless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal."). Furthermore, even if the issue was meritorious, the Petitioner failed to argue how the issue would have been successful on appeal had it been raised. Rather, he simply argued that the issue should have been raised but was not. That alone is insufficient for this court to determine the merits of a previously omitted issue. *Hamblin*, 2013 WL 5371230, at *8. For these reasons, he is not entitled to relief.

### III.   CONCLUSION

Based on the foregoing reasons and the record as a whole, we affirm the judgement of the post-conviction court.


 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE