# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 17, 2012

## JEFFERY C. GRISSOM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
No. F-11108     Larry B. Stanley, Jr., Judge

**No. M2011-01691-CCA-R3-PC - Filed October 26, 2012**

The Petitioner, Jeffery C. Grissom, appeals as of right from the Warren County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance of counsel from one of his two attorneys at trial and from appellate counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Lauren Zechman, McMinnville, Tennessee, for the appellant, Jeffery C. Grissom.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

Following a jury trial, the Petitioner was convicted of one count of possession with intent to deliver .5 grams or more of cocaine. This court affirmed the Petitioner's conviction on direct appeal. See State v. Jeffery C. Grissom, No. M2009-00375-CCA-R3-CD, 2010 WL 424254 (Tenn. Crim. App. Feb. 4, 2010), perm. app. denied, (Tenn. May 12, 2010). At trial, the Petitioner's ex-wife testified that in the early morning hours of February 17, 2007, she went to a house where the Petitioner had been staying and saw "a few bags of white powder . . . sitting on top of an iPod" in the kitchen. The Petitioner and his ex-wife eventually got

into an altercation and his ex-wife called the police, left the house, and got into her car, which was parked in the driveway. The Petitioner's ex-wife testified at trial that she was able to observe from her car the Petitioner "carry onto the porch the bags of cocaine she had seen on the kitchen counter . . . [and] move[] around the porch as if disposing of the drugs." Id. at *1-2.

The arresting officer, Officer Clayton, testified that he searched the porch and found four "baggies of white powder." Officer Clayton took the baggies to the home of the police department's "drug investigator" where they were packaged for shipment to the Tennessee Bureau of Investigation. In all, 7.33 grams of cocaine were collected that night. The drug investigator testified that the cocaine was valued at $800 and that the iPod the Petitioner's ex-wife saw was likely a set of digital scales. The Petitioner denied that the cocaine belonged to him and denied that he placed the cocaine on the porch. The Petitioner claimed that his ex-wife had placed $800 worth of cocaine on his porch in an attempt to "get" him. The Petitioner also claimed that his ex-wife could not see the porch from her car. The jury ultimately accredited the testimony of the Petitioner's ex-wife over the Petitioner's testimony and convicted the Petitioner of the charged offense. Grissom, 2010 WL 424254, at *2-4.

On August 27, 2010, the Petitioner filed a timely, pro se petition for post-conviction relief. Counsel was appointed and an amended petition was filed on November 1, 2010. At his trial, the Petitioner was represented by the District Public Defender (lead counsel) and an Assistant Public Defender (co-counsel). Co-counsel also represented the Petitioner in his direct appeal to this court. However, in both of his petitions for post-conviction relief, the Petitioner only alleged that co-counsel had been ineffective in her representation and made no mention of lead counsel. The post-conviction court held a hearing regarding this matter on July 13, 2011.

At the hearing, the Petitioner testified that he felt that co-counsel was "the lead attorney on this" because she was "the only one that talked to [him] about anything." The Petitioner further testified that he believed that co-counsel was the lead attorney because "[e]very paperwork [he] had was signed with her name." The Petitioner alleged that he only spoke with lead counsel at "the meeting before trial" and that he thought that lead counsel "was [just] sitting in on the trial" with co-counsel and "just there for support." The Petitioner complained that co-counsel "only met with [him] like two or three times" before trial. The Petitioner also complained that the letters co-counsel sent him "really just didn't say" anything beyond "just the basic things." The Petitioner further complained that he was only able to speak with co-counsel over the phone on two occasions. According to the Petitioner, co-counsel reviewed the discovery in the case with him, but "she didn't go in depth with it." The Petitioner also testified that co-counsel failed to discuss "the possible consequences of going to trial" with him, but he "had an idea on [his] own" of what the consequences could

be.  The Petitioner admitted on cross-examination that he had rejected a plea offer from the State and that he wanted to try the case "because [he] was innocent."

The Petitioner complained in general that he "felt like [he] wasn't represent[ed] to the fullest" by co-counsel.  The Petitioner testified that he felt the evidence at trial was insufficient to sustain his conviction and that his trial "was quick."  The Petitioner complained that Officer Clayton did not "field test the drugs right then" at the time of his arrest.  Instead, Officer Clayton "put them on his person and left the scene and went to another police's house at 3:00 in the morning."  According to the Petitioner, that destroyed "the chain of evidence."  The Petitioner complained that co-counsel made no mention of Officer Clayton's actions at trial and did not file a "motion to suppress" the evidence on those grounds.  The Petitioner also complained that had the police "field tested [the cocaine] and finger-printed [the baggies] then they would have known whose dope it was and what it was."  However, the Petitioner admitted on cross-examination that his theory at trial was that his ex-wife had set him up and that he "denied knowing anything about" the cocaine.

The Petitioner complained that there were no face-to-face meetings with co-counsel during the pendency of his direct appeal.  The Petitioner testified that he only spoke to co-counsel about his appeal once by phone and that he received letters from co-counsel "telling [him] what was going on."  The Petitioner also testified that he had his mother and girlfriend go to co-counsel's office to speak to her on his behalf.  The Petitioner complained that co-counsel did not discuss with him any issues regarding the "chain of evidence" or the field testing of the cocaine and did not raise those issues on appeal.

The Petitioner testified that while his appeal was pending, he discovered that Officer Clayton "had been indicted on certain illegal issues."  According to the Petitioner, he asked co-counsel to raise this issue in his appeal, but he "never could get [co-counsel] to put that in on [his] appeals [sic]."  The Petitioner opined that Officer Clayton's arrest several years after the Petitioner's arrest "was a good issue" and that it was "one of [the] main issues [he] needed in [his] appeal."  The Petitioner testified that he felt this way because "if you are dirty now, you were dirty then."  The Petitioner theorized that Officer Clayton could have "switch[ed] the drugs on the way to" the drug investigator's house.  The Petitioner also testified that he believed his ex-wife and Officer Clayton "may have known each other."

Co-counsel testified that she became involved in the case sometime after the indictment had been filed.  Co-counsel testified that she did not understand why the Petitioner believed she was "the lead counsel on this."  Co-counsel recalled that she first met with the Petitioner before "his plea date."  Co-counsel explained that lead counsel "asked [her] to assist him as trial was approaching" and that she only met with the Petitioner when lead counsel "would ask [her] to go with him."  Co-counsel testified that she had "no idea"

how often lead counsel contacted the Petitioner prior to her involvement in the case. Co-counsel also testified that the "discovery process . . . was already complete by the time [she] became involved in the case," so she was unsure if lead counsel had reviewed the discovery materials with the Petitioner. Co-counsel recalled that she did not discuss "the possible consequences of going to trial" with the Petitioner, but that lead counsel spoke with the Petitioner about that.

Co-counsel testified that she did not file any motions to suppress in the Petitioner's case because she "did not feel there were any suppressible issues." Co-counsel was aware that the baggies had not been finger-printed but that issue was not addressed at trial. When asked if the issue should have been raised at trial, co-counsel responded that "[i]t was not [her] call to make." Co-counsel further testified that the Petitioner's case "wasn't [her] case" and that she did what lead counsel "told [her] to do." According to co-counsel, she "didn't make calls about objections or anything like that." Co-counsel also testified that Officer Clayton was not questioned at trial about "his failure to field test the drugs at the scene" because that "was not [their] defense strategy." Co-counsel believed that had they raised these issues regarding the "chain of evidence" at trial it "would have detracted" from their defense strategy.

Co-counsel testified that she spoke with the Petitioner "several times on the phone" and that she would always take the Petitioner's phone calls if she was in the office. Co-counsel was unsure of how many times the Petitioner tried to contact her by phone. Co-counsel testified that she "had a discussion with [the Petitioner] after [she] argued the motion for new trial and explained that [she] would appeal." Co-counsel also explained to the Petitioner that she would appeal the issues she "felt would be most successfully argued." Co-counsel admitted that she "did not have communications" with the Petitioner during each and every stage of the appellate process. Co-counsel testified that she did not meet with the Petitioner "face-to-face" during the appellate process, that she mailed the Petitioner a copy of the brief and this court's opinion, and that she spoke with the Petitioner by phone "a couple of times" during the pendency of the appeal.

Co-counsel testified that she did not believe that Officer Clayton's "indiscretions" would have been a relevant issue on appeal. Co-counsel explained that by the time Officer Clayton was arrested "the appeal process was near the end" and that both parties had already submitted their briefs to this court. Co-counsel further explained that there "was no way for [her] to submit" the issue to this court and that she "didn't feel that was the proper remedy" or that this court "would even consider the information." On further questioning, co-counsel reiterated that she "didn't feel like Officer Clayton's subsequent criminal charges some two years later were relevant to the appeal on this case." Co-counsel testified that the issue regarding Officer Clayton's arrest was the only issue the Petitioner asked her to include in

the appeal. Co-counsel also testified that she did not raise the issues regarding "chain of evidence" on appeal because the issues were not raised at trial, they were not included in the motion for new trial, and the defense's theory at trial was "that these weren't his drugs, that they had been planted there by his ex-wife."

Following the hearing, the post-conviction court denied the Petitioner post-conviction relief.[1] The post-conviction court accredited co-counsel's testimony that she was assisting lead counsel and that she was not in charge of the Petitioner's case. With regard to the Petitioner's claims that co-counsel failed to effectively communicate with him, the post-conviction court concluded that there was not "any credibility in that claim." As for the "chain of evidence" issues, the post-conviction court ruled that failure to raise the issues at trial was not "inappropriate" because they would have been inconsistent with the defense strategy and "would likely have confused the jury." With regard to the issue of Officer Clayton's arrest, the post-conviction court stated that it was unaware of any case where this court "would come back and say, well, because this witness gets in trouble later then his testimony a year or two ago . . . is invalid." The post-conviction court noted that most of the Petitioner's claims were "simply that there was not enough evidence to convict him and not really claiming that that was his attorney's fault."

## ANALYSIS

On appeal, the Petitioner maintains his contention that co-counsel was the "lead attorney" in his case and contends that she was ineffective in her representation of him at trial and on appeal. The Petitioner argues that co-counsel failed to properly communicate with him and failed to fully inform him of the consequences of going to trial or his "options." The Petitioner further argues that co-counsel failed to address at trial the issues of why the baggies were not finger-printed and why Officer Clayton did not field test the cocaine at the crime scene. With regard to his appeal, the Petitioner argues that co-counsel was ineffective because she did not properly communicate with him during the pendency of the appeal. The Petitioner also argues that co-counsel was ineffective because she failed to raise the issue of Officer Clayton's subsequent arrest on appeal as well as the issues regarding the "chain of evidence." The State responds that the Petitioner has failed to show that co-counsel performed deficiently or that he was prejudiced by co-counsel's actions.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn.

---

[1] Both the pro se petition and the amended petition raised several other issues. The post-conviction court ultimately denied post-conviction relief on these issues as well. However, the Petitioner has not raised these issues in this appeal.

Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## I. Co-counsel's Performance at Trial

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The Petitioner contends that co-counsel failed to properly communicate with him prior to trial and that she failed to inform him of the possible consequences of going to trial or his "options." The post-conviction court accredited co-counsel's testimony that she was asked to assist lead counsel on this case after the indictment and discovery process, that lead counsel had previously met and discussed the consequences of going to trial with the Petitioner, and that she was not involved in those discussions. The Petitioner failed to call lead counsel as a witness at the post-conviction hearing. Without lead counsel's testimony, it is impossible for this court to determine how often lead counsel spoke with the Petitioner and the substance of their conversations. Therefore, the Petitioner has failed to establish his allegations by clear and convincing evidence. Furthermore, the Petitioner testified that he "had an idea on [his] own" of what the consequences of going to trial could be and that he wanted to go to trial because he was "innocent." Therefore, even if the Petitioner's allegations were true, he has failed to establish that he was prejudiced by his trial attorneys' actions.

With respect to the Petitioner's issues regarding the "chain of evidence," we note that co-counsel testified that the Petitioner's case "wasn't [her] case" and that she did what lead

counsel "told [her] to do." According to co-counsel, lead counsel made the decisions regarding what defenses to raise and what evidence to challenge at trial. Because the Petitioner did not call lead counsel to testify at the post-conviction hearing, we conclude that he has failed to prove his allegations by clear and convincing evidence. Furthermore, co-counsel testified that raising the issues of why the baggies were not finger-printed and why Officer Clayton failed to field test the cocaine at the crime scene would have detracted from the defense theory that the Petitioner's ex-wife was attempting to frame him. The post-conviction court concluded that failure to raise the issues at trial was not "inappropriate" because it would have been inconsistent with their defense strategy and "would likely have confused the jury." The Petitioner has failed to establish that the record preponderates against the post-conviction court's findings. Accordingly, we conclude that the post-conviction court did not err in denying post-conviction relief in regards to co-counsel's performance at trial.

*II. Co-Counsel's Performance on Appeal*

In determining whether appellate counsel's failure to raise an issue on appeal constitutes ineffective assistance of counsel, our supreme court has held that "unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." Carpenter v. State, 126 S.W.3d 879, 887-88 (Tenn. 2004) (citing United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993)). "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel" as these are "tactical and strategic choices," which should not be second-guessed. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

Co-counsel testified that the Petitioner only requested that she include one issue on appeal, that Officer Clayton had been arrested while the Petitioner's appeal was still pending. Co-counsel further testified that by the time Officer Clayton had been arrested, both parties had submitted their briefs to this court and that she was waiting on this court to file its opinion. Co-counsel stated that she "didn't feel like Officer Clayton's subsequent criminal charges some two years later were relevant to the appeal on this case." Likewise, the post-conviction court concluded that it was unaware of any case where this court "would come back and say, well, because this witness gets in trouble later then his testimony a year or two ago . . . is invalid." Based upon the record before this court, we agree with their assessment that the issue was without merit and would not have resulted in relief for the Petitioner. Therefore, co-counsel cannot be found ineffective for her decision not to raise the issue on appeal. This is also true with respect to the "chain of evidence" issues. Co-counsel testified that these issues were not addressed at trial and not included in the motion for new trial. As

such, these issues would have ultimately been deemed waived on appeal and had no merit. See Tenn. R. App. P. 3(e) (stating that "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other actions committed or occurring during the trial of the case . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived"). Furthermore, the Petitioner's defense strategy was that the drugs were planted on the porch by his ex-wife; therefore, the type and amount of drugs recovered by the police were irrelevant.

With respect to the Petitioner's claim that co-counsel failed to effectively communicate with him during the pendency of the appeal, we note that co-counsel testified that she spoke with the Petitioner after the motion for new trial hearing regarding the appellate process and the issues she would raise on appeal, that she sent the Petitioner letters regarding the important stages of the appellate process, and that she spoke with the Petitioner on the phone whenever the Petitioner called her office. Therefore, this issue is without merit. Accordingly, we conclude that the post-conviction court did not err when it denied post-conviction relief with regard to co-counsel's performance on appeal.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE