FILED

08/21/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 4, 2025 Session

**TIMOTHY MCKINNEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 14-03457      Jennifer Johnson Mitchell, Judge

_____

**No. W2024-00374-CCA-R3-PC**

_____

A Shelby County jury convicted the Petitioner, Timothy McKinney, of one count of attempted second degree murder, one count of employing a firearm during the commission of a dangerous felony, and two counts of reckless endangerment with a deadly weapon. *State v. McKinney*, No. W2016-00834-CCA-R3-CD, 2018 WL 1055719, at *1 (Tenn. Crim. App. Feb. 23, 2019), *perm. app. denied* (Tenn. July 19, 2018). The Petitioner also pleaded guilty to three counts of being a convicted felon in possession of a handgun. The trial court sentenced the Petitioner as a repeat violent offender to life without the possibility of parole. The Petitioner unsuccessfully appealed his convictions and sentence. *Id.* The Petitioner then filed a petition for post-conviction relief, amended by appointed counsel, in which he alleged that his trial counsel was ineffective in multiple ways. After a hearing, the post-conviction court denied relief, and this appeal ensued. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which MATTHEW J. WILSON, J., and ROY B. MORGAN, JR., SP. J., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Timothy McKinney.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Vicki Carriker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**
**A. Trial**

This case arises as the result of the accidental shooting of the victim, Wayna Phillips, which occurred January 23, 2014, when the Petitioner attempted to fire his weapon at another man in a convenience store. *McKinney*, 2018 WL 1055719, at *1. We summarized the facts in our direct appeal as follows:

This case arises as the result of a shooting that occurred around 4:00 p.m. on January 23, 2014. A few days prior, the defendant was outside North Memphis Market when three men attempted to rob him at gunpoint. The [Petitioner] fled and, despite a criminal history that included three felony convictions for crimes of violence against people and knowledge these convictions precluded him from owning a firearm, purchased a gun from someone in the neighborhood. According to the [Petitioner], the gun was necessary for protection.

When the [Petitioner] approached the North Memphis Market on January 23, 2014, he recognized a man wearing a white hat. Once inside the store, the [Petitioner] confronted the man and accused him of being one of the men who attempted to rob him a few days earlier. The man in the white hat denied involvement, and the defendant saw him reach for his weapon. The defendant then pulled his gun and fired two shots, accidentally shooting Wayna Phillips, the fourteen year old victim, in the leg. The man in the white hat fired back, and both men fled the scene on foot. The victim crawled to an aisle in the store and waited for help to arrive.

Renardo Hibbler, a cook at the North Memphis Market, was working at the time of the shooting. He initially thought the shots were firecrackers and moved to the back of the store to prepare chicken. While in the back, Mr. Hibbler heard a second round of shots, peeked into the store, and saw a black male exiting the building. Mr. Hibbler yelled, asking whether anyone had been hurt, and learned the victim had been shot in the leg. Mr. Hibbler reported the shooting and injury to "911."

Javier McKissick was also working at the North Memphis Market during the shooting on January 23. Mr. McKissick had seen the defendant and the other men fighting outside the store a few days before and the day of the shooting noticed the defendant and one of the other men from the fight looking at each other from opposite ends of the store. Based on their body language, he knew something was about to happen. The men exchanged words, separated, and began shooting at one another. The [Petitioner] pulled his gun first and fired the first shot.

2

Following the shooting, an ambulance arrived and transported the victim to LeBonheur Children's Hospital, where he remained for two days. While in the hospital, the victim underwent surgery for a broken thigh bone and was diagnosed with nerve damage. At the time of trial, the victim continued to have sharp pain in his leg as a result of the nerve damage.

Officer John Hawkins with the Memphis Police Department ("MPD") was the first officer to respond to the emergency call and approximately five officers followed. When Officer Hawkins arrived, the victim had already been transported to the hospital, so he spoke with the victim's mother. The victim's mother was hysterical and indicated her son sustained a gunshot wound to the leg. After talking to additional witnesses, Officer Hawkins determined there were at least two suspects, one of whom was named "Tim." He never learned the identity of the second suspect.

Officers Russell Woolley, Dresseas Fox, and Hope Smith also responded to the scene. Officer Smith took photographs of the building, tagged evidence, sketched the scene, and collected five bullet casings. Agent Eric Warren with the Tennessee Bureau of Investigation ("TBI") identified the casings as .380 caliber bullet casings and opined the bullets had been fired from two separate guns—two bullets from one gun and three bullets from the other. As part of their investigation, Officers Woolley and Fox spoke with witnesses and in the days that followed made several unsuccessful attempts to locate the defendant at two addresses obtained for him. Officers Woolley and Fox also met with Mr. McKissick in his home. Mr. McKissick is deaf, but the officers were able to communicate with him in writing and through his sister, who knew sign language. Mr. McKissick later went to the police station and gave an official statement with the aid of a sign language interpreter.

Officers Thomas Parker and James Fort assisted with the collection and processing of video evidence. Officer Parker retrieved the surveillance video from the North Memphis Market and converted footage of the incident into a format that could be played for the jury. Officer Fort captured still photos of the incident from the surveillance video. Mr. McKissick identified the [Petitioner] in both surveillance video and still shots.

Following the shooting, police officers spent days searching the area and speaking with neighbors regarding the [Petitioner's] whereabouts. The [Petitioner] learned the police were looking for him and, after speaking with his attorney, turned himself in to authorities.

3

The State rested after calling the victim, Officer Hawkins, Officer Fox, Officer Parker, Officer Fort, Officer Smith, Mr. Hibbler, Agent Warrant, Officer Chappell, Mr. McKissick, and Officer Woolley to testify. Following a Momon hearing, the [Petitioner] testified on his own behalf. The [Petitioner] stated that following the altercation with the man in the white hat and two others outside the market, he was in fear for his life. As a result, despite knowledge he was not to own a firearm due to his three prior felony convictions involving violence and a conviction of aggravated robbery at gunpoint, the [Petitioner] bought a gun. According to the [Petitioner], he only drew his weapon and fired after the man reached for his gun. The [Petitioner] fired two shots. The victim was standing in the checkout line at the time, and the [Petitioner] did not intend to shoot him.

. . . .

After listening to closing arguments and deliberating, the jury found the [Petitioner] guilty of the following: Count 1, attempted murder in the second degree; Count 2, employment of a firearm during the commission of an attempted murder in the second degree; Counts 3 and 4, reckless endangerment with a deadly weapon; and Counts 5 through 7, of being a convicted felon in possession of a firearm having been convicted of felonies involving the use or attempted use of violence. As the thirteenth juror, the trial court concurred with all findings.

The trial court then commenced a second phase of trial for determination as to whether the [Petitioner] had a prior conviction for attempted murder in the second degree. The State entered a certified copy of the [Petitioner's] prior conviction for the offense and called Norma Henry, an employee with the Shelby County Criminal Court Clerk's Office, to explain the document. Following brief deliberations, the jury found the [Petitioner] did indeed have a prior conviction for attempted murder in the second degree, and trial court again concurred with the jury's findings.

The trial court subsequently held a sentencing hearing during which the State presented certified copies of the [Petitioner's] prior convictions for aggravated robbery, second degree murder, and attempted second degree murder, making the [Petitioner] subject to the enhanced sentencing requirements for repeat violent offenders found in Tennessee Code Annotated section 40-35-120. In addition, the State presented evidence that the [Petitioner's] criminal history included offenses committed as a juvenile

4

that would have been felonies had he committed them as an adult. After considering the requirements of Tennessee Code Annotated section 40-35-120, the statutory purposes of sentencing, and the enhancement factors presented by the State, the trial court merged Counts 6 and 7 into Count 5 and imposed an effective sentence of life in imprisonment without parole plus ten years to be served at 100%.

*McKinney*, 2018 WL 1055719, at *1-*4.

### B. Post Conviction

The Petitioner filed a petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel because Counsel: (1) conceded that the Petitioner was not entitled to a self-defense instruction; (2) failed to argue that the trial court used the wrong standard when allowing into evidence a prior conviction pursuant to Tennessee Rule of Evidence 609(B); (3) failed to move for a bifurcated trial as to the convicted felon in possesion of a handgun charges; (4) erred when he stipulated to a guilty plea colloquy from the Petitioner's prior felony convictions; (5) failed to request, in writing, an instruction on misdemeanor reckless endangerment; (6) failed to object when the state used the Petitioner's prior convictions as propensity evidence; (7) failed to object when the State asked the Petitioner about his employment status and source of income. He further contends that the cumulative effect of Counsel's errors entitles him to relief. The Petitioner finally contends that his appellate counsel was also ineffective for failing to argue on appeal that: (1) the trial court erred when it did not instruct the jury on self-defense; and (2) the trial court committed plain error when it failed to instruct the jury on misdemeanor reckless endangerment.

The trial court held a hearing on the petition during which the parties presented the following evidence: Before this shooting, the Petitioner had previously pleaded guilty to second degree murder, served his sentence, and been released. He was then arrested for committing the shooting in this case. The Petitioner's post-conviction counsel stated that his trial counsel ("Counsel") improperly conceded before trial that self-defense did not apply because an innocent person was recklessly injured. Post-conviction counsel argued that, because the Petitioner was convicted under the doctrine of transferred intent, the Petitioner's self-defense argument also transferred.

Counsel testified that he was appointed to represent the Petitioner and had eighteen years of criminal law experience at the time of the appointment. Counsel said that, before the original trial date of January 11, 2016, he considered self-defense the most viable defense. The Petitioner wanted to argue an identity defense, but, because the shooting was video recorded, Counsel thought that would not be an effective defense and wanted to argue

5

self-defense. At the pretrial conference, the State said that the Defendant was not entitled to a self-defense instruction pursuant to Tennessee Code Annotated section 39-11-604, which prevents a defendant from raising self-defense in a prosecution for reckless harm to a third person. The State asserted that this section was codified to deter reckless conduct that could harm innocent third persons.

At the time, Counsel was not familiar with that statute, and he agreed with post-conviction counsel's position that, because the Petitioner was tried based upon transferred intent, then he should be able to also transfer his right to defend himself to an injured third party. Counsel said, however, that his understanding of the statute was contrary to that position. Although he did not agree with the logic of the law, he believed that the law said that the defense of self-defense did not transfer as the intent did. Counsel said he read applicable case law that examined the statute in a post-conviction setting and remained of the opinion that the statute was valid and prevented a defense of self-defense in this case.

Counsel testified that he had spent an enormous amount of time with the Petitioner because he also represented him previously when he faced a first degree murder charge in which the State sought the death penalty. The first time that case was tried, the defense asked for and was granted a mistrial. The case was tried again and resulted in another mistrial. The Petitioner ultimately pleaded guilty to second degree murder. Based upon his extensive familiarity with the Petitioner, Counsel was certain that the video of the shooting in this case depicted the Petitioner. He therefore did not want to present an alibi defense or a defense based upon mistaken identity.

Counsel said that there were not a lot of winning strategies in this case, as it was a "third strike" for the Petitioner. Counsel asked the judge to give the jury a charge that instructed them to consider whether there was self-defense involved as they decided whether the act was an intentional act. He also asked for the lesser-included offenses instruction, which he believed would have allowed the jury to convict the Petitioner of attempted second degree murder if they found that self-defense was involved. He filed a written request asking the court for a special jury instruction pertaining to self-defense.

In the written request, he asked the judge to instruct the jury, in part: "a defendant may be justified in using force against another person but criminally responsible if the force recklessly injures a third person." He agreed that this acknowledged Tennessee Code Annotated section 39-11-604's existence, and he conceded that it applied. His requested instruction went on to instruct the jury to consider self-defense when evaluating the Petitioner's mental state, and if the proof showed that he acted from an honest or mistaken belief that he was in imminent danger of death or serious bodily injury that he should not be found criminally liable.

6

The trial judge took issue with the last statement and ruled that the statement was incorrect, and that the Petitioner could be held liable. Counsel again argued that section 604 was wrong because if an innocent party is injured when someone is acting in self-defense it is a mistake and not an intentional act.

Counsel agreed that the trial testimony was that the Petitioner did not brandish a weapon until he saw the man with the white hat reaching for a weapon. Counsel recalled that the Petitioner also testified at trial and told the jury that this was the case.

Counsel also testified that in his motion for new trial, he argued that the trial court erred when it did not instruct the jury on self-defense. This was true, despite the fact that he had conceded that section 604 applied. He said that he did so in the hope that the appellate courts would change the law.

Counsel moved the trial court to limit the State to saying that the Petitioner had a prior conviction, but not what felony conviction it was or that the felony was of a violent nature. The trial court denied this request, so Counsel asked for a severance of the charges, which the trial court denied. Counsel advised the Petitioner to plead guilty to being a felon in possession of a handgun before trial, hoping to "buy . . . some credibility." He explained that there were bad facts in the case: that the Petitioner was a felon and had a gun and that an innocent third party juvenile was injured. He stated that the video also helped the Petitioner. It showed another man brandishing a weapon before the Petitioner pulled his weapon. Counsel opined that "a lot of people in Memphis would say if somebody is coming at you with a gun, shoot them." His goal was to argue this to the jury.

Counsel testified that this case was the first time he had tried a "three strikes" case. The Petitioner spent much of the time during their meeting complaining that the State was "out to get him" because he had gotten two mistrials and the victim of his murder was a "very beloved off-duty police officer." Counsel tried to convince the Petitioner that rather than prosecutorial misconduct, the State probably took issue with the fact that, after not being convicted of first degree murder in that case, by pleading to a lesser offense, the Petitioner was back and using a handgun to commit a crime.

Counsel did not have a strategic reason for not including in the motion for new trial that the trial court erred when it denied his motion for severance. Similarly, he was unsure why he did not include that the trial court erred when it did not allow him to stipulate that the Petitioner had a prior felony rather than inform the jury that it was a violent felony.

Counsel said that the fact that the prior felony was violent was relevant to the "three strikes" law under which the Petitioner was being tried. He opined, however, that it was

not relevant to any issue at trial. Counsel conceded, however, that the "three strikes" rule may have required the State to prove that the Petitioner had two prior violent felonies.

Counsel testified that he orally asked the trial court to instruct the jury on misdemeanor reckless endangerment, even though he did not think it was a logical instruction given that the victim was unintentionally injured during a gunfight. He was not aware that his request must be in writing. He opined, however, that this was of no consequence because the trial court instructed the jury on other lesser-included offenses that it rejected.

Counsel identified the State's line of cross-examination during which they asked the Petitioner about his employment, and the Petitioner said he had been unemployed for seventeen years and had no income. The State also asked the Petitioner where he bought the gun and who paid for the gun. Counsel said he did not object because he was focusing on whether the jury would believe their self-defense argument, which was their only real trial strategy. Counsel said he was also surprised by the Petitioner's answer because the Petitioner had told him that he moved to Nashville for work before trial.

Counsel further explained his failure to object, saying that he made several objections at the beginning of the testimony that the trial court overruled. He did not think he was doing himself or the Petitioner any favors by continuing to object repeatedly over minor things.

With regard to the State's cross-examination of the Petitioner's prior violent felonies, Counsel said that in a standard trial this testimony would not be admissible. In a "three strikes" trial, however, the State is required to prove that the two prior felonies were crimes of violence, so the trial court allowed this line of questioning. Counsel said that the State's question to the Petitioner about whether he "ha[d] a problem with violence" was proper. Counsel was asked about several of the State's questions during the Petitioner's cross-examination to which he did not object, and he generally said that an objection did not seem necessary to aid the Petitioner's defense.

During cross-examination, Counsel testified that as an officer of the court he was required to follow the law, and the law in this case included that self-defense was not an appropriate defense against an innocent third party hurt as a result of the altercation. Counsel, however, drafted a special jury instruction that referenced self-defense and which the trial court included, in part, in its instructions to the jury.

About the stipulation to the Petitioner's record, Counsel said that once the trial judge made it clear that he was going to allow the admission of the three felonies, he felt it was

better to stipulate to those at the beginning of trial. Counsel testified that the Petitioner qualified for and was tried under the "three strikes" law because his record was "terrible."

Counsel agreed that the trial judge misspoke when he stated the Tennessee Rule of Evidence 609 standard for the admissibility of prior felonies for impeachment purposes, but he agreed that, in context, it was clear that the trial judge actually applied the correct standard. Counsel said that the Petitioner had multiple crimes of dishonesty that were felonies, in addition to his violent felonies.

Counsel testified he orally asked for misdemeanor reckless endangerment to be instructed, and the trial court considered and rejected the request. Counsel opined this was appropriate given the facts.

Counsel said that he encouraged the Petitioner to testify on his own behalf. He recounted that the Petitioner was likable and well-spoken and that the video showed that he was acting in response to someone coming at him with a gun. He wanted the Petitioner to tell the jury about the market and the neighborhood and the violence that can be anticipated there. Counsel said that, in hindsight, had he known that the State was going to be allowed to "harangue" the Petitioner as much as they did, he might not have encouraged the Petitioner to testify.

Counsel said that he did not object when the prosecutor asked the Petitioner about his employment history, in part, because the Petitioner was incarcerated for some of that time. Counsel did not want to bring that fact before the jury.

The Petitioner was represented in his direct appeal by another attorney ("Appellate Counsel"). Appellate Counsel testified that he had been practicing law for approximately a year at the time he represented the Petitioner and that the Petitioner's case was his first Class B felony appellate case.

Appellate Counsel testified that he could not find his file in this case, so he had to testify from memory about his representation of the Petitioner. He recalled that the main issues on appeal were misconduct during closing argument, prosecutorial misconduct based upon the admission of a "flyer," and cumulative error. Appellate Counsel recalled that one of the judges on the appellate panel agreed with him and, in a dissent, said he would have reversed the case. His Rule 11 application for permission to appeal to the Supreme Court was denied.

Appellate Counsel said that he thought that Counsel had waived the issue of whether the trial court erred when it failed to instruct the jury on self-defense. He acknowledged

that Counsel requested that instruction, but Appellate Counsel opined that Counsel did not preserve the issue for appeal because he failed to object again to it.

Appellate Counsel said that he did not research the statute regarding self-defense not being permitted when an unrelated third party is injured. He said he thought the self-defense issue was waived so he did not look into it further.

Appellate Counsel said that he did not raise the issue of plain error with regard to the misdemeanor reckless endangerment instruction because he chose the five best arguments to raise to the appellate court, and that issue was not one of them.

On cross-examination, Appellate Counsel testified that he would not have raised an issue not supported by the law, which may explain why he did not raise the self-defense issue.

Based upon this evidence, the law, and the arguments of the parties, the post-conviction denied the Petitioner relief.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied him post-conviction relief. He asserts that Counsel was ineffective for: (1) conceding that the Petitioner was not entitled to a self-dense instruction; (2) failing to argue that the trial court used the wrong standard pursuant to Rule 609(B) when it admitted the Petitioner's 1994 aggravated robbery conviction and for failing to include this issue on appeal; (3) failing to file a motion to bifurcate the convicted felon in possession of a firearm charges from the other counts of the indictment; (4) stipulating to the guilty plea colloquy from his prior felony convictions; (5) failing to request in writing an instruction on misdemeanor reckless endangerment as a lesser included offense of attempted first degree murder; (6) failing to object when the State used the Petitioner's prior convictions as propensity evidence during his cross-examination; and (7) failing to object when the State asked the Petitioner about his employment status and source of income. The Petitioner also contends that the cumulative effect of these errors entitles him to relief. Finally, the Petitioner contends that Appellate Counsel was ineffective for failing to argue that the trial court erred when it did not instruct the jury on self-defense and for failing to assert on appeal that the trial court committed plain error by not instructing the jury on misdemeanor reckless endangerment as a lesser included offense of attempted first degree murder.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. §40-30-103 (2014). The petitioner bears the burden of proving factual

10

allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-pronged test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation,

11

only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### 1. Self-Defense Instruction

The Petitioner contends that Counsel was ineffective because he "conceded" that the Petitioner was not entitled to a self-defense instruction. Pretrial, the State contended that the self-defense instruction did not apply by statute, pursuant to Tennessee Code Annotated section 39-11-604, because the Petitioner injured an innocent third party. Counsel argued otherwise. The trial court agreed with the State. Counsel acknowledged the language of the statute but argued it was not a fair law, and Counsel drafted a proposed instruction that allowed the jury to consider self-defense with regard to the Petitioner's mental state. The trial court accepted this instruction and offered it to the jury.

The trial court instructed the jury on the law of the case and then added:

> If you find that the Defendant was acting in self-defense against the man in the white hat the law states that even though a person is justified in threatening or using force or deadly force against another, the man in the white hat, the justification for self-defense is not available in a prosecution for [h]arm to an innocent third person (Wayna Philips) who is injured by the use of such force. A Defendant can be held criminally responsible if that use of force injures a third person (Wayna Phillips). The underl[y]ing principle

is that a Defendant is – a Defendant's culpability is to be measured independently for each victim.

During closing argument, the State argued that self-defense did not apply as a defense to the shooting of Wayna Phillips. Counsel argued that, if the Petitioner's bullet had hit the man in the white hat, this would be a clear case of self-defense. Counsel acknowledged that, since the bullet hit a third party, the Petitioner could not plead self-defense. Counsel went on to state, "You don't have to have a perfect self-defense though in order to have something that is relevant when you are trying to figure out what's going through [the Petitioner's] mind at that moment." Counsel said that the "right verdict" was attempted voluntary manslaughter.

On appeal, the Petitioner contends that Counsel was deficient for conceding to the jury that the Petitioner was not entitled to a self-defense instruction. The Petitioner contends that Tennessee Code Annotated section 39-11-604 applies only in those situations in which a defendant is charged for a reckless act against an innocent third person. In this case, the Petitioner was charged with an intentional act against Mr. Phillips under the transferred intent doctrine, so he states that section 604 is inapplicable. He asserts that, because the intent was transferred, the right to self-defense should also have transferred. He cites the *Jarvis v. State* decision in support of his position, stating that the opinion "appears to state that section 39-11-604 would not prohibit a self-defense instruction if the defendant is charged with an intentional or knowing act." *See State v. Jarvis*, No. M2013-01640-CCA-R3-PC, 2014 WL 2001048, at *5 (Tenn. Crim. App. May 14, 2014), *perm. app. denied* (Sept. 19, 2014).

The Petitioner also acknowledges a footnote in *State v. Perrier*, 536 S.W.3d 388 (Tenn. 2017), published after *Jarvis*, which states that the "justification of self-defense was not available to the defendant for the aggravated assault charge of the minor victim because she was an innocent third person injured by the defendant's conduct." He, however, attempts to distinguish *Perrier* from his case by noting that the defendant in *Perrier* was charged with crimes against his intended victim and also against an innocent bystander, whereas the Petitioner was only charged with an offense against an innocent bystander. The Petitioner finally contends that Counsel's concession of this issue prejudiced him.

The State counters that the *Jarvis* decision held that the defendant could assert self-defense for his actions against his intended victim but that he could not assert that defense for the reckless homicide of the innocent third party victim. This holding, the State posits, supports the trial court's decision. The State contends that, because *Perrier* was published after the Petitioner's trial, Counsel's representation should not be judged based on its outcome, and Counsel certainly was not ineffective for not anticipating the *Perrier* decision. Finally, the State asserts that the Petitioner cannot show he was prejudiced

13

because there is no evidence that, had Counsel maintained his argument, the trial court would have changed its decision and given the standard self-defense instruction. Finally, the State concludes that, even if the trial court had provided the instruction, there is no evidence that the outcome of the trial would have changed. The State submits that the jury saw the video of the shooting, received a modified self-defense instruction, heard the Petitioner's version of events, and rejected his version of events by its verdict.

About this issue, the post-conviction court found that Counsel was not ineffective in this regard. It found:

> [I]n this case, trial counsel argued self-defense in spite of Tenn. Code Ann. § 39-11-604, the jury received an appropriate instruction as to self-defense, and Petitioner was convicted of a lesser-included offense. This court finds, as a matter of fact, that trial counsel did not actually concede self-defense as an argument. Trial counsel was not deficient. Petitioner is not entitled to relief on this issue.

To be entitled to post-conviction relief, the Petitioner must establish that Counsel's performance was deficient and that the deficient performance prejudiced him. Should the Petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, at 694; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

In this case, the Petitioner cannot prove by clear and convincing evidence that Counsel's performance prejudiced him. There is no evidence that, even had Counsel further pursued his argument for a standard self-defense jury instruction, the trial court would have accepted it. In fact, Counsel initially argued that the statute did not apply, but the trial court disagreed. Counsel then asked for an instruction that allowed the jury to consider the fact that the Petitioner was defending himself when deciding the Petitioner's intent. The trial court agreed and instructed the jury as Counsel requested. This instruction was to Petitioner's benefit, not prejudice. Counsel asked the jury to convict the Petitioner of attempted voluntary manslaughter, and, although the jury did not convict accordingly, the jury did find the Petitioner guilty of the lesser-included offense of attempted second degree murder.

We conclude that the Petitioner has not proven by clear and convincing evidence his contention that, but for Counsel's failure to argue that section 604 did not apply, the outcome of the proceedings would have been different. The Petitioner is not entitled to relief as to this issue.

14

## 2. Tennessee Rule of Evidence 609(B) Standard

The Petitioner contends that Counsel was ineffective for failing to argue that the trial court used the wrong standard pursuant to Tennessee Rule of Evidence 609(b) when it determined that his 1994 conviction for aggravated robbery could be admitted into evidence.

During a pretrial hearing, the State informed the trial court that it intended to use his prior felony convictions to impeach him if the Petitioner intended to testify. Those convictions included a 1994 conviction for aggravated robbery, a 2013 conviction for second degree murder, and a 2013 conviction for attempted second degree murder. The trial court excluded the 2013 convictions because they were not relevant to the Petitioner's credibility and were too similar to the offense for which he was on trial. The trial court ruled that the 1994 conviction was admissible. It stated that it was an offense that involved dishonesty and then discussed the balancing test to determine whether it was admissible, stating:

> [A]nd the fact that he does in fact have a crime that involves dishonesty, an aggravated robbery, albeit that it is old, it does not appear to me that the probative value of that is substantially outweighed by the prejudicial effect.
>
> I know it's old, but I think in the interest of justice this Court finds that that is a crime that involves dishonesty. And it would be appropriate to cross-examine [the Petitioner] about a prior aggravated robbery conviction albeit old. The probative value of that I think is important in that under all of those circumstances, I'm not sure that I'm stating this correctly, but under all of those circumstances I think the language that I need to be using is in the interest of justice which I am attempting to say as best I can without stumbling through it all, that I feel that that is appropriate to be able to cross-examine him about his aggravated robbery.
>
> I will rule that the prejudicial effect of the attempted murder and the murder substantially outweigh the probative value, and I won't allow those. But I will find that the prejudicial [e]ffect does not substantially outweigh the probative value as it relates to the aggravated robbery. And in the interest of justice I am going to allow that.

The first time that the trial court articulated the balancing test, it appears that it misspoke. The post-conviction court found:

15

While it is true that the trial court incorrectly stated the standard in one instance, elsewhere in the record, as pointed out by the State during the post-conviction hearing, the trial court stated the standard correctly. [C]ounsel also acknowledged that in the single instance pointed out by [the] Petitioner, the trial court had misstated the standard, but in other instances, the trial court had correctly articulated the 609(b) standard. Also [C]ounsel believed that the trial court had applied the correct standard. Given that [the] Petitioner chose to testify and that the robbery is a crime of dishonesty, the probative value of the conviction did substantially outweigh its prejudicial effect. This court finds the trial court's decision fairly applied the correct standard, and accordingly, this issue is without merit. [C]ounsel did not raise this issue in his motion for new trial, because [C]ounsel did not perceive the finding to be in error. [The] Petitioner has failed to prove that [C]ounsel was deficient by not arguing in the motion for new trial that the trial court applied the wrong standard.

On appeal, the Petitioner acknowledges that the trial court properly instructed the jury that it could only consider the effect of the conviction on the Petitioner's credibility, but the Petitioner maintains that Counsel was deficient for failing to argue that the trial court used the wrong standard when it applied Rule 609. He asserts that there is a "reasonable probability" that had Counsel done so, the trial court would have prohibited the State from asking about the 1994 conviction. The State counters that the trial court applied the appropriate standard and that it merely misspoke on one occasion, so there was no issue for Counsel to address. We agree with the State.

As relevant here, Tennessee Rule of Evidence 609 states that the State may attack a witness's credibility with a prior conviction if the offense was punishable by death or imprisonment in excess of one year or involved dishonesty or false statement. About the time limit, the rule states:

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

16

Tenn. R. Evid. 609(b).

It is clear from the record that the trial court applied the appropriate standard. Although the court did misspeak on one occasion, it clearly and appropriately articulated and applied the correct standard later in its finding. Counsel was not ineffective for not raising this issue.

Further, the Petitioner cannot prove prejudice. It was clear that the trial court found that the interests of justice supported allowing the State to ask the Petitioner about his 1994 conviction. The trial court judiciously excluded two other prior convictions. There is no evidence that any further argument by Counsel would have swayed the trial court or that he would have been successful had it been raised in the motion for new trial. He is not entitled to relief on this issue.

### 3. Bifurcated Trial Request

The Petitioner contends that Counsel was ineffective for not asking that the trial be bifurcated, with the charge for being a convicted felon in possession of a firearm being tried separately from the other counts. The State counters that Counsel chose not to bifurcate the trial in order to garner credibility with the jury by way of admitting to the jury that the Petitioner was a prior felon. The State notes that the trial court had already found that the State could impeach the Petitioner with one of his prior felony convictions if he testified, and the Petitioner said he was going to testify. Accordingly, Counsel chose a strategy that included the Petitioner admitting he was a prior felon, in part as an explanation of why he was acting in self-defense. This strategy, the State posits, was not deficient.

Tennessee Code Annotated section 39-17-1307(b)(1)(A) provides that a person commits an offense "who unlawfully possesses a firearm" and "[h]as been convicted of a felony crime of violence" or an "attempt to commit a felony crime of violence." Had Counsel requested bifurcation before the trial, the trial court could have concluded that a bifurcated proceeding was necessary "in order to avoid undue prejudice" and ordered bifurcation. *State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009). Counsel in this case asked for the offenses to be "sever[ed] . . . out," but the trial court denied this request.

This Court has held that bifurcation is "the better procedure" when "the defendant is charged with offenses involving the use of violence and force and also charged with the status offense of unlawful possession of a firearm for having a similar prior felony conviction." *State v. Foust*, 482 S.W.3d 20, 46-47 (Tenn. Crim. App. 2015). Nevertheless, this court has repeatedly recognized that bifurcation is not mandated. *State v. Howard*, No. W2020-00207-CCA-R3-CD, 2021 WL 144235, at *3 (Tenn. Crim. App. Jan. 15, 2021), *perm. app. denied* (Tenn. May 14, 2021); *State v. Johnson*, No. W2018-01222-CCA-R3-

17

CD, 2019 WL 6045569, at *14 (Tenn. Crim. App. Nov. 14, 2019), *perm. app. denied* (Tenn. Apr. 1, 2020); *State v. Richardson*, No. W2016-02227-CCA-R3-CD, 2018 WL 821775, at *16 (Tenn. Crim. App. Feb. 9, 2018), *no perm. app. filed.*

In *Foust*, the defendant argued that the trial court had not allowed him to offer the stipulation that he had been convicted of prior felonies without disclosing that the felony was for a violent offense. *Foust*, 482 S.W.3d at 46-47. Here, the parties entered into a stipulation at trial. "[S]tipulating to prior felonies and requesting bifurcated proceedings are both valid avenues for a defendant charged with possession of a firearm as a convicted felon." *Johnson*, 2019 WL 6045569, at *14 (citing *State v. Smith*, No. W2012-01931-CCA-R3-CD, 2013 WL 12182606, at *4 (Tenn. Crim. App. Aug. 29, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014)); *see Richardson*, 2018 WL 821775, at *16.

At a pretrial hearing, Counsel asked that the Petitioner be allowed to stipulate that he had a "prior felony" that qualified for the felon in possession of a handgun charge. The trial court said that the Petitioner could stipulate that he had a "qualifying felony" but then agreed with the State that the language "of violence of the person" needed to be included in the stipulation. The trial court said the only other option was severance. Counsel said that although he though the most appropriate way to handle this issue was to "sever" out the felon in possession of a handgun charges, he agreed to stipulate to there being a prior qualifying felony. The parties agreed to a stipulation that read that the Petitioner's prior felonies were felonies "involving the use of violence." The trial court instructed the jury that it may not consider the prior convictions as proof of his disposition to commit the crime for which he was on trial. When Counsel objected to the State's mention of the prior convictions during closing arguments, the trial court again instructed the jury that the prior convictions were "relevant as to credibility in on[e] instance" and "relevant as to certain counts of the indictment in another incident."

When deciding this issue, the post-conviction court found that, given that the Petitioner intended to testify as part of his self-defense strategy, his status as a prior felon was likely to become known by the jury. It found that Counsel made a strategic decision to stipulate to the prior felonies and that Counsel was not deficient for failing to request bifurcated proceedings. Further, the post-conviction court found that the Petitioner could not prove prejudice because even if Counsel had bifurcated the proceedings, there did not exist a reasonable probability that the outcome of the trial would have been different.

We conclude that Counsel was not ineffective for failing to move to bifurcate the charges. Furthermore, we agree with the State that the Petitioner was not prejudiced by Counsel's failure to request bifurcation. The Petitioner testified, knowing that one of his prior felony convictions would be used to impeach him. The weight of the evidence against

18

the Petitioner was compelling. The shooting was captured on video. The jury saw the video, and it heard the Petitioner recount the reasoning for the shooting.

Additionally, the trial court provided a limiting instruction to the jury that prohibited the jury from considering the Petitioner's prior convictions as proof of his disposition to commit the offense for which he was on trial. The Petitioner has failed to establish that Counsel was ineffective or that the outcome of his trial would have been different had his felon in possession charge been bifurcated. He is not entitled to relief on this issue.

### 4. Stipulation Regarding Prior Felonies

The Petitioner contends that Counsel was ineffective for stipulating to the introduction of a conversation that occurred during the Petitioner's guilty plea to the 2013 second degree murder and attempted second degree murder. During the conversation, the trial court informed the Petitioner that, "for the rest of his life" he could never buy any handgun, firearm, rifle, shotgun, ammunition or bullets. During the Petitioner's cross-examination, the State asked the Petitioner if he knew that he could not legally own or possess a firearm, and he said that he was aware. The State continued to press the Petitioner on this issue, and he said that he felt he needed a gun because, although he understood the law, when living in the area he lived, he felt he had to procure a weapon.

During the post-conviction proceedings, Counsel said he was unsure why he stipulated to the introduction of the Petitioner's prior guilty plea colloquy. He said that it was a certified transcript, which he thought was going to be admissible either way and that this was a "three strikes" case, meaning the State may have been required to prove to the jury that the Petitioner had prior violent felony convictions.

In its order denying relief, the post-conviction court found:

> [The] Petitioner does not challenge that [C]ounsel was ineffective for failing to object to the conversation between [the] Petitioner and Judge Coffee, only that [C]ounsel was ineffective for his stipulation to the documents as certified and exact copies. It cannot be said that [C]ounsel was ineffective for stipulating to the documents as certified exact copies. As noted by [C]ounsel, the State was likely to bring in a court clerk to certify that the documents were certified and exact copies, and [C]ounsel wanted to bring the jury's attention to the question of self-defense. [C]ounsel also noted that bringing in a witness to testify to the documents might have drawn more attention to the prior felonies. [The] Petitioner has not shown that but for [C]ounsel's stipulation to the plea colloquy, the outcome of his trial would have been different. . . . This court finds that [the] Petitioner suffered

19

no prejudice as a result of [C]ounsel's stipulation to the documents as certified and exact copies.

The State contends that the post-conviction court correctly accredited Counsel's testimony that the transcripts were admissible and that he knew that the State could have brought a witness in to authenticate the documents. Once the trial court ruled that the evidence was admissible, Counsel stipulated to it so that the State would not bring in a witness and call more attention to the evidence.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462 (citing *Strickland*, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id*. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

After review, we conclude that Counsel engaged in a strategic decision when he attempted to minimize the impact of the colloquy between the Petitioner and the trial judge from his 2013 convictions by stipulating to it rather than requiring testimony by an authenticating witness or witnesses. As noted, we give deference to matters of strategy and tactical choices, if they are informed ones based upon adequate preparation. Counsel was clearly prepared, and he clearly made informed decisions throughout his representation of the Petitioner.

We further note that the Petitioner contends that, had the jury not heard this colloquy, "there is a reasonably probability that [he] would have been acquitted on all charges." We do not agree. The Petitioner testified, and the jury knew that he had a prior qualifying felony conviction. The State cross-examined him about whether he knew he was prohibited from possessing or procuring a weapon, and the Petitioner agreed. We do not agree that the jury, in the face of the evidence against the Petitioner, would have acquitted the Petitioner but for the admission at trial of a colloquy during which a trial court in a prior case informed the Petitioner that he was prohibited from possessing or procuring a weapon. As such, the Petitioner cannot prove prejudice, and he is not entitled to relief on this issue.

20

## 5. Reckless Endangerment Instruction

The Petitioner next contends that Counsel was ineffective because he did not submit a written request for the jury to be instructed on misdemeanor reckless endangerment as a lesser-included offense of attempted first degree murder. The Petitioner acknowledges that Counsel orally requested an instruction on misdemeanor reckless endangerment as a lesser included offense of attempted first degree murder, but that the trial court denied this request, stating that it was not an appropriate instruction.

At trial, the trial court instructed the jury on attempted first degree murder, attempted second degree murder, and attempted voluntary manslaughter as lesser-included offenses. The jury convicted the Petitioner of attempted second degree murder, rejecting the lesser-included offense of attempted voluntary manslaughter.

About this issue, the post-conviction court found:

> Even if misdemeanor reckless endangerment had been included in the jury's instruction, based upon the order of consideration, the jury would not have reached the question of misdemeanor reckless endangerment. . . . A properly instructed jury would not have convicted [the P]etitioner of the lesser-included offense of misdemeanor reckless endangerment. . . . . This court finds [C]ounsel's actions were reasonable. [C]ounsel testified that he considered misdemeanor reckless endangerment to be a "ludicrous" outcome. This court finds that Petitioner failed to prove that [C]ounsel's actions were deficient.

On appeal, the State agrees. It notes that misdemeanor reckless endangerment is reckless conduct committed without a deadly weapon. *See* T.C.A. § 39-13-103.

The Petitioner asks us to determine whether Counsel's failure to submit a written request for, or object to, the trial court's decision to omit the misdemeanor reckless endangerment instruction as a lesser-included offense of attempted first degree murder constituted ineffective assistance of counsel.

"'[W]hen determining whether an erroneous failure to instruct on a lesser-included offense requires reversal, . . . the proper inquiry for an appellate court is whether the error is harmless beyond a reasonable doubt.'" *State v. Davis*, 266 S.W.3d 896, 903 (Tenn. 2008) (quoting *State v. Ely*, 48 S.W.3d 710, 727 (Tenn. 2001)). This court has recognized two approaches for deciding whether a trial court's failure to charge a lesser-included offense is harmless error, and these two approaches guide us in determining whether the Petitioner was prejudiced by Counsel's failure to request a lesser included offense.

21

The first approach is implicated where the trial court instructs the jury as to the charged offense as well as other lesser-included offenses thereof but does not instruct the jury regarding all of the lesser-included offenses supported by the evidence. When the jury convicts the defendant of the greater charged offense rather than the lesser-included offense or offenses, the jury necessarily rejects all of the other lesser offenses. *State v. Locke*, 90 S.W.3d at 672; *State v. Allen*, 69 S.W.3d at 191; *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998). Where one of the charged but rejected lesser-included offenses is an intermediate or buffer offense standing between the errantly omitted lesser-included offense and the offense for which the defendant was convicted, the charging error is shown to be harmless beyond a reasonable doubt. *Locke*, 90 S.W.3d at 675; *Allen*, 69 S.W.3d at 190.

*State v. Banks*, 271 S.W.3d 90, 126 (Tenn. 2008). Because the Petitioner was indicted for attempted first degree murder, and the jury, which was instructed on attempted first degree murder, attempted second degree murder, and attempted voluntary manslaughter, convicted him of attempted second degree murder, any error in failing to charge the jury on misdemeanor reckless endangerment would be harmless. Attempted voluntary manslaughter would be a "buffer" offense.

The jury, by its verdict, rejected the lesser-included offense of attempted voluntary manslaughter and thereby rejected the lesser-included offense of misdemeanor reckless endangerment.

We conclude that the Petitioner has failed to demonstrate deficient performance or prejudice based on Counsel's failure to request misdemeanor reckless endangerment in writing. First, the Petitioner's actions did not constitute misdemeanor reckless endangerment because the Petitioner undisputedly fired a firearm. Thus, Counsel's decision not to pursue his request in writing for misdemeanor reckless endangerment as a lesser-included offense of attempted first degree murder did not prejudice the Petitioner or demonstrate deficient performance. It was undisputed that the Petitioner fired a firearm, thereby making misdemeanor reckless endangerment an irrelevant instruction. Further, the Petitioner cannot prove prejudice because any instructional error was rendered harmless by the jury's verdict. The Petitioner is not entitled to relief.

### 6. Prior Convictions

The Petitioner next contends that Counsel was ineffective when he failed to object to the State's aggressive cross-examination of him about his prior criminal convictions. During the trial, the State asked the Petitioner if he had three separate convictions for

violent acts against three separate people, one of which was a robbery. The Petitioner explained he was eighteen at the time of the robbery, and he accepted the charge. He denied having a problem with violence but said that, when he saw the man with the white hat pull a weapon, it was a reflex for him to draw his weapon. At the post-conviction hearing, Counsel said that he thought the cross-examination was appropriate because this was a "three strikes case."

The post-conviction court denied relief, finding:

> Tennessee Rules of Evidence 404(a)(1) states that in a criminal case, character evidence of the accused may be offered by the prosecution to rebut evidence of a character trait of the alleged victim offered by the accused and admitted under Rule 404(a)(2). *See* Tenn. R. Evid. 404(a)(1). In his testimony at trial, [the] Petitioner attacked the character of the man in the white hat. Pursuant to the 2009 Advisory Commission Comment to Tennessee Rule of Evidence 404, "[I]f the accused attacks the character of the alleged victim, amended Rule 404(a)(1) allows the prosecution to prove the accused's character for the same trait. This is an additional way the accused 'opens the door' to character evidence." As in the prior issue, [C]ounsel chose not to object as part of his trial strategy, and a legitimate question exists as to whether [C]ounsel's objection would have been successful. Again, reviewing courts give deference to matters of strategy and tactical choices. . . . Additionally, [the] Petitioner has not pointed to a particular standard of practice breached by [C]ounsel for his failure to object. . . . Petitioner has failed to prove that [C]ounsel's actions were deficient.

On appeal, the Petitioner maintains that Counsel was deficient for failing to object to this line of questioning. He asserts that the State's line of questioning was clearly designed to show that the Petitioner had a propensity for violence. The Petitioner contends that Counsel should have objected, that if he had objected the trial court would have shut down this line of questioning, and that he would have been acquitted.

The State counters that the post-conviction court found credible Counsel's testimony that he thought that the line of questioning was allowable based upon the nature of the case. It notes that the Petitioner attacked the character of the man in the white hat, which would open the door to the State questioning the Petitioner about his character for the same trait. The State further notes this was part of Counsel's trial strategy. Before trial, the Petitioner entered a guilty plea to the two counts of felon in possession of a handgun charges to gain credibility with the jury. During cross-examination, the Petitioner was able to respond that he saw the man in the white hat pull a weapon first and that he did not want to allow someone else to harm him. The State asserts it was a reasonable, strategic

23

decision to allow the Petitioner to tell and maintain his story during the State's cross-examination.

After review, we conclude that Counsel was not deficient for failing to object to this line of questioning by the State. As previously stated, "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89. However, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

Counsel made the decision not to object to this line of questioning by the State. The State was permitted to cross-examine the Petitioner about his prior robbery conviction, as it was relevant to his credibility, and two other qualifying convictions of violence, as they were relevant to his being a convicted felon in possession of a handgun. The State's line of questioning addressed those convictions and whether they indicated that the Petitioner may have responded with violence inappropriately, essentially attacking his self-defense argument. The video supported that the man in the white hat pulled a weapon first, and the Petitioner testified during this line of cross-examination that he saw the man in the white hat draw a weapon and did not want to allow himself to be harmed. As noted, we give deference to matters of strategy and tactical choices, if they are informed ones based upon adequate preparation. Counsel was clearly prepared, and he clearly made informed decisions throughout his representation of the Petitioner. His failure to object during this line of questioning was no exception. The Petitioner has not shown that Counsel was deficient in this regard.

### 7. Employment Status

The Petitioner contends that Counsel was ineffective for failing to object when the State questioned the Petitioner about what source of income he used to purchase the gun that he used in the shooting, as he had been unemployed for seventeen years. During the post-conviction hearing, Counsel said that, although he knew that the Petitioner had a job in Nashville around the time of the shooting, he did not object because he did not think it did the Petitioner any good to object to things that were not significant or at issue. It could make the jury more "worried about it when it doesn't matter."

The post-conviction court agreed, saying that this was a matter of strategy and that Counsel made the strategic decision to not object thinking that objecting would do more harm than good. It further found that the Petitioner had not proven prejudice because he had not proven that, even if he objected and the line of questioning stopped, he would have been acquitted.

We agree with the post-conviction court's findings. The question is not whether Counsel "could" have objected, it is whether his performance was deficient because he made a strategic decision not to object and whether his failure to object to this line of questioning changed the outcome of the trial. Counsel's decision not to object because he believed that doing so was not in the best interest of his client was not deficient. Further, the Petitioner cannot show that, if the State were prohibited from asking about his employment history, he would have been acquitted. We again note that the shooting was on video. The jury saw the video and heard the Petitioner's testimony about the reason for his drawing his weapon, which they may have found somewhat convincing, as they convicted him of a lesser-included offense. The Petitioner is not entitled to relief on this issue.

### 8. Cumulative Error

The Petitioner next contends that even if none of the instances of deficient performance raised are individually sufficient to warrant post-conviction relief, the cumulative effect of the instances does entitle him to relief. We respectfully disagree.

In the context of a trial, the cumulative error doctrine requires relief when "multiple errors [are] committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (internal citations omitted); *see State v. Jordan*, 325 S.W.3d 1, 79 (Tenn. 2010) ("'[T]he combination of multiple errors may necessitate . . . reversal . . . even if individual errors do not require relief.'") (quoting *State v. Cribbs*, 967 S.W.2d 773, 789 (Tenn. 1998)).

In the context of post-conviction review, "when an attorney has made a series of errors [at the trial] that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an ineffective assistance of counsel allegation. *McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010); *see State v. Taylor*, 968 S.W.2d 900 (Tenn. Crim. App. 1997). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *McKinney*, 2010 WL 796939, at *37; *see Taylor*, 968 S.W.2d at 909. The question is whether counsel's deficiencies "cumulatively prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *McKinney*, 2010 WL 796939, at *37. Counsel's failure to conduct adequate pretrial preparation and investigation may establish prejudice pursuant to *Strickland*. *Id.*

25

In this case, we have not concluded that Counsel was deficient in any regard. We therefore also conclude that the Petitioner's right to a fair proceeding was not impacted by the cumulative effect of any deficiency based upon Counsel's representation.

### 9. Appellate Counsel

The Petitioner contends that Appellate Counsel was ineffective for failing to raise two issues: (1) that the trial court erred when it failed to instruct the jury on self-defense; and (2) that the trial court committed plain error by failing to instruct the jury on misdemeanor reckless endangerment as a lesser-included offense of attempted first degree murder.

We determine whether Appellate Counsel's representation on appeal was constitutionally effective using the same *Strickland* standard of review applied to claims of ineffective assistance at trial asserted under the Sixth Amendment to the United States Constitution. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, then the reviewing court must determine the merits of the issue. *Id.* at 887. Obviously, if an issue has no merit or is weak, then counsel's performance on appeal will not be deficient if counsel fails to raise it. *Id.* Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from counsel's failure to raise the issue on appeal. *Id.* In sum, "[w]hen an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." *Id.* at 887-88 (citing *United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993)).

For the reviewing court to determine the merits of the previously omitted issue, a petitioner should present the issue in the same form and with the same legal argument, that is, applying law to the facts of the case, which the petitioner asserts counsel on appeal should have done. *Hamblin v. State*, No. M2012-01649-CCA-R3-PC, 2013 WL 5371230, at *8 (Tenn. Crim. App. Sept. 26, 2013). It is not enough to simply state that counsel on appeal should have raised certain issues and to argue that these issues could have resulted in relief being granted to the petitioner. *Id.*

"[T]here is no constitutional requirement that an attorney argue every issue on appeal." *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995). Rather, "the determination of which issues to raise on appeal is generally within appellate counsel's sound discretion." *Carpenter*, 126 S.W.3d at 887 (citation omitted). An appellate court "should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight." *Id.* (citation omitted). Deference to tactical choices, however, does not apply if such choices are not "within the range of competence required of attorneys in criminal cases." *Id.* (citation omitted).

26

A reviewing court need not address both *Strickland* components if a petitioner makes an insufficient showing of one component. *Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697).

### a. Self-Defense

The Petitioner contends Appellate Counsel was ineffective for failing to raise the issue of the trial court failing to instruct the jury on self-defense. At the post-conviction hearing, Appellate Counsel said that he did not raise this issue because he believed that Counsel had waived this issue. He further said that he did not review Tennessee Code Annotated section 39-11-604 because he knew he was not going to raise this issue.

The post-conviction court did not agree that the issue was waived, as Counsel had objected pretrial, filed a written motion, and raised the issue in the motion for new trial. It said, however, that there was no evidence of a reasonable probability that, had Appellate Counsel raised this issue, the appellate court would have found reversible error. The post-conviction court noted that the trial court did give a modified self-defense instruction, which caused the issue to be less obvious rather than if no self-defense instruction had been given.

Even if there were merit to the Petitioner's contention, we simply cannot find that it was deficient for Appellate Counsel not to raise this issue. This issue was not clear or obvious. Appellate Counsel reviewed all the relevant documentation and raised the issues that he felt were most likely to prevail. At the time of the appeal, whether a defendant could raise self-defense when a third-party victim was injured was not a well-settled area of law. As noted by the state, this Court has stated, "counsel cannot be held to a standard of being clairvoyant concerning a case not yet decided." *Elkins v State*, No. E2005-02153-CCA-R3-PC, 2008 WL 65329, at *6 (Tenn. Crim. App. Jan 7, 2008). The trial court gave a modified self-defense instruction, and Appellate Counsel deemed the issue likely without merit.

We conclude that the Petitioner has not proven that Appellate Counsel was deficient in this regard.

### b. Misdemeanor Reckless Endangerment

The Petitioner next contends that Appellate Counsel was ineffective for failing to raise the issue of whether the trial court erred when it did not instruct the jury on misdemeanor reckless endangerment. As we have reviewed this issue and determined that any error was harmless beyond a reasonable doubt based upon the jury's verdict, we conclude that this

27

issue would be without merit on appeal.  As previously stated, "[w]hen an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." *Carpenter*, 126 S.W.3d at 887-88.  Accordingly, the Petitioner is not entitled to post-conviction relief on this issue.

### III. Conclusion

Based upon the foregoing, we affirm the post-conviction court's judgment.


_____s/ *ROBERT W. WEDEMEYER*__
ROBERT W. WEDEMEYER, JUDGE